ORIGINAL

CTJ/RMT

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2008 FEB 11  AM 9:44

CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSE MERCED, PRESIDENT,** | § | |
| **TEMPLO YORUBA OMO** | § | |
| **ORISHA TEXAS INC.** | § | |
| **Plaintiff** | § | **Civil Action No.  4-O6CV-891-A** |
| | § | |
| **V.** | § | |
| | § | |
| **THE CITY OF EULESS** | § | |
| **Defendants** | § | |

### _JOINTLY PROPOSED TRIAL EXHIBITS_

TO THE HONORABLE JUDGE OF THE COURT:

      Plaintiff and Defendant met at the office of Plaintiff's counsel at 10:00 a.m. on 8 February 2008 to discuss the exhibits they would offer at the trial of this cause, and now file their Jointly Proposed Trial Exhibits, pursuant to the 4 February 2008 Order of this Court:

I.     Plaintiff and Defendant agree that the following Exhibits shall be offered without objection into the evidence in this cause, and hereby move their admission into evidence.

1.     Euless City Code, Article I, §§10-61 through 10.9, and Article III, §§10-61-10.73 (Exhibit "B" to Defendant's Answers to Plaintiff's Interrogatories, No. 10)

2.     Articles of Incorporation of Templo Yoruba Omo Orisha-Texas

3.     Resume of Dr. Michael Mason

5.     City of Euless, Complaint Report, 4 September 2004; City of Euless, Complaint Report, 4 May 2006, and Euless Police Department Call for Service Report, 4 September 2004, and Euless Police Department Call for Service Report, 4 May 2006, Euless Police Department Offense Report, (Incident 060029188), Euless Police Department Involved Persons Report (Incident 060029188)

6.     _Defendant's Responses to Plaintiff's First Request for Admissions_, No. 3, 23, 24, 25, 26, 27, 28, 29, and _Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories_, No. 5

7.     City of Euless official responses to animal-related complaints

II.     Plaintiff and Defendant do not agree that the following Exhibits are admissible in the evidence in this cause.

A.     Proposed by Plaintiff, with objection by Defendant.

8.     Expert Report of Dr. Michael Mason. Plaintiff intends to offer into evidence the Expert Report of Dr. Michael Mason. The Defendant objects to its admission.

B.     Proposed by Defendant, with objection by Plaintiff.

9.     Euless City Code, Article 10, §14-204. Defendant intends to offer into evidence Euless City Code, Article 10, §14-204. The Plaintiff objects to its admission.

10.     Euless City Health and Sanitation Code, Chapter 42. Defendant intends to offer into evidence Euless City Health and Sanitation Code, Chapter 42. The Plaintiff objects to its admission.

Respectfully submitted,

LAW OFFICES OF
WILLIAM M. McKAMIE, P.C.
By: William M. McKamie
State Bar No. 13686800
13750 San Pedro, Suite 640
San Antonio, TX 78232
(210)546-2122, FAX: (210)546-2130
ATTORNEYS FOR DEFENDANT

JOHN WHEAT GIBSON, P.C.
By: John Wheat Gibson
Texas Bar No. 07868500
701 Commerce, Suite 800
Dallas, TX 75202
(214) 748-6944, FAX: (214) 748-8693
ATTORNEY FOR PLAINTIFF

(Code 1974, § 3-22)
    **Charter References:** Bonds of city officers and employees, etc., art. XII, § 13.
    **Cross References:** Officers and employees, § 2-116 et seq.

**Sec. 10-37. Same--Right of ingress.**

    Any animal control officer shall have the right of ingress on any property within the city in order to carry out the provisions of this chapter, and to determine the condition of any animal, bird or fowl, but in no event shall any animal control officer enter a structure used for human habitation without consent of the occupant unless first securing a search or arrest warrant.
(Code 1974, § 3-23)

**Secs. 10-38--10-60. Reserved.**

**ARTICLE III.**

**CARE AND CONTROL**

DEFENDANT'S
EXHIBIT
"B"

**Sec. 10-61. Animals running at large, generally.**

    (a)    It shall be unlawful for any person owning an animal to permit such animal to run at large.

    (b)    An animal shall be considered to be running at large unless it is restrained under the following circumstances:

    (1)    It is securely caged or confined to its owner's home or yard, which yard is enclosed by a fence of sufficient strength and height to prevent the animal from escaping therefrom, or secured on the premises by a chain, leash or other restraining line of sufficient strength to prevent the animal from escaping from the premises and so arranged that the animal will remain upon the premises when the chain, leash or restraining line is stretched to full length. No such chain, leash or restraining line shall be less than ten feet in length.

    (2)    It is accompanied by its owner or trainer at a bona fide show, field trial or exhibition.

    (3)    It is secured by a leash or rein of sufficient strength to restrain and control the animal.

    (4)    It is a guard dog appropriately registered under the provisions of section 10-72 and is in the performance of duty in an enclosed building or securely fenced and locked area marked as provided in section 10-72.

    (c)    Any officer or citizen of the city is hereby authorized to take up and deliver to the animal control officer any animal that may be found running at large in the corporate limits of the city.

    (d)    Any peace officer or animal control officer of the city is authorized to impound any animal running at large or otherwise found in violation of this chapter. If the animal running at large, or in violation of this chapter, is on private property, or property of the animal's owner, such peace officer or animal control officer may enter such premises, other than a private dwelling, for the purpose of impoundment or the issuance of a citation, or both, subject to the applicable provisions of the law.
(Code 1974, § 3-4)
    **State Law References:** Certain dogs prohibited from running at large, V.T.C.A., Health and Safety Code §§ 822.011, 822.042; authority to adopt, V.T.C.A., Health and Safety Code § 826.033.

http://www.inhouse.com/ordinances/CH010%20-%20Chapter%2010%20%20ANIMALS.htm   5/5/2006

### Sec. 10-62. Fowl running at large.

It shall be unlawful for any person to permit, suffer or allow any chickens, ducks, turkeys, geese or other fowl owned, kept or possessed by them or under their control, to run at large outside of a cage or pen.
(Code 1974, § 3-5)

### Sec. 10-63. Confinement during estrus.

Any unspayed female dog or cat in the state of estrus (heat) shall be confined during such period of time in a house, building or secure enclosure, and such area or enclosure shall be so constructed that no other dog or cat from outside may gain access to the confined animal. Owners not complying may be ordered by an animal control officer to remove the animal in heat to a boarding kennel, veterinary hospital or animal shelter. All expenses incurred as a result of such confinement shall be the responsibility of the owner. Failure to comply with the removal order of an animal control officer shall be a violation of this chapter and the dog or cat may be impounded as prescribed in this chapter.
(Code 1974, § 3-6)

### Sec. 10-64. Fees.

Fees for impoundment of animals, newspaper advertisements, handling and disposing of dead animals and any other fees authorized or permitted under this chapter shall be as set forth in chapter 30.
(Code 1974, § 3-8)
   **Cross References:** Fees for impoundment of animals, etc., § 30-4.

### Sec. 10-65. Animal care.

If the following shall occur, the animal may be impounded and the owner shall be guilty of a violation of this chapter:

(1)    The owner shall fail to provide an animal with sufficient and wholesome food and water, adequate shelter and protection from weather, veterinary care when needed to prevent suffering, and humane care and treatment.

(2)    A person shall beat, cruelly ill treat, torment, abuse, overload, overwork or otherwise harm an animal, or cause, instigate or permit any dog fight, cock fight, bullfight or other combat between animals or between animals and humans.

(3)    A person shall abandon or dump any animal.

(4)    A person shall willfully wound, trap, maim or cripple by any method any animal, bird or fowl. It shall also be unlawful for a person to kill any animal, bird or fowl, except domesticated fowl considered as general tablefare such as chicken or turkey, within the city.

(5)    A person shall sell, offer for sale, barter or give away baby chicks, ducklings or other fowl, rabbits or hamsters as novelties, whether or not dyed, colored or otherwise artificially treated; provided, however, that this section shall not be construed to prohibit the display or sale of natural chicks, ducklings or other fowl in proper brooder facilities from hatcheries or stores engaged in the business of selling such chicks, ducklings or

other fowl to be raised for commercial purposes, or the sale of rabbits or hamsters as pets.

(6)     A person shall give away any live animal as a prize for, or as an inducement to enter any contest, game or other competition, or as an inducement to enter into any business agreement except as to the offering of offspring in a breeding transaction.

(7)     The failure of a person in operation of a motor vehicle who strikes a pet animal or livestock to immediately report such injury or death to the animal's owner, and if the owner cannot be ascertained and located, such person shall fail to report the accident to an animal control officer or peace officer.

(8)     A person exposes any known poisonous substance, whether mixed with food or not, so that such poisonous substance shall be liable to be eaten by a pet animal, livestock or person. This section is not intended to prohibit the prudent use of herbicides, insecticides or rodent control materials. A person shall also not expose an open trap or metal jaw-type trap that shall be liable to injure any pet animal, livestock or person.

(Code 1974, § 3-9)
    State Law References: Cruelty to animals, V.T.C.A., Penal Code § 42.11.

### Sec. 10-66. Barking/noise.

Any person who shall harbor or keep on his premises, or in or about the premises under his control, any animal which barks, whines, howls, crows, cackles, or makes any noise excessively and continuously, and such noise causes material distress, discomfort or injury to persons of ordinary sensibilities in the immediate vicinity thereof, shall be guilty of a violation under this chapter, and a separate offense shall be deemed committed each day during or on which such violation occurs or continues.

(Code 1974, § 3-11; Ord. No. 1675, § 1, 1-25-05)
    Cross References: Noise, § 46-171 et seq.

### Sec. 10-67. Sanitary condition of animal pens.

Any person who shall harbor or keep on his premises, or in or about a premises under his control, any animal or fowl, and who shall allow such premises to become a hazard to general health and welfare of the community, or who shall allow such premises to give off noxious or offensive odors due to the activity or presence of such animals, shall be guilty of a violation of this chapter.

(Code 1974, § 3-12)

### Sec. 10-68. Restriction on number of dogs, cats or any other animals, or combination, to be kept in residential premises.

It shall be unlawful to keep or harbor more than four dogs, cats or other animals, or combination of animals, beyond the normal weaning age on any premises, except as permitted in section 10-104.

(Code 1974, § 3-13)
    Cross References: Unified development code, ch. 84.

### Sec. 10-69. Keeping of prohibited animals.

It shall be unlawful to keep or harbor any prohibited animal within the city.

(Code 1974, § 3-14)
    Cross References: Definition of prohibited animals, § 10-1.

http://www.inhouse.com/ordinances/CH010%20-%20Chapter%2010%20%20ANIMALS.htm   5/5/2006

### Sec. 10-70. Disposal of dead animals.

It shall be illegal for an owner of any dead animal, fowl or livestock (estray) to fail to lawfully dispose of the dead animal within 24 hours of its discovery by the owner.
(Code 1974, § 3-15)

### Sec. 10-71. Vicious animals.

No person shall own or harbor a vicious animal within the city, and any such animal shall be impounded as a public nuisance. If impoundment of such animal cannot be made with safety, the animal may be destroyed by a peace officer or animal control officer without notice to the owner. Any animal which has, on separate occasions, inflicted two or more reported bites and the animal was running at large at the time the incidents occurred shall be deemed vicious and shall be removed from the city within 24 hours following the owner being notified; otherwise, or if the owner be unknown, such animal shall be impounded and destroyed in a humane manner. Any pet animal or livestock which kills or maims another animal or severely injures a person shall be removed from the city within 24 hours following the owner being notified, otherwise, or if such owner be unknown, such animal shall be impounded and destroyed. Any pet animal or livestock which maims or kills a person shall be impounded and destroyed.
(Code 1974, § 3-16)
　　　**State Law References:** Vicious and dangerous dogs, V.T.C.A., Health and Safety Code § 822.001 et seq.

### Sec. 10-72. Guard dogs.

(a)　　All dogs kept solely for the protection of premises and property, residential, commercial or personal, shall be registered with the city animal shelter. The building area or premises in which such dog is confined shall be conspicuously posted on all sides with warning signs bearing letters not less than two inches high, stating "GUARD DOG ON PREMISES."

(b)　　Each guard dog shall be issued a tag designating that animal as a guard dog for a fee as set forth in section 30-4(l). Such tag shall be attached to the collar or harness of the guard dog at all times, and shall bear the words "GUARD OR ATTACK DOG." Owners of guard dogs registered hereunder shall be required to comply with the provisions of section 10-133.

(c)　　The building area or premises where a guard dog is maintained shall be subject to inspection by any animal control officer to determine that the animal in question is maintained and secured at all times in such a manner as to prevent its contact with the public.
(Code 1974, § 3-17; Ord. No. 1098, § II, 10-13-92)
　　　**Cross References:** Fee for identification tag, § 30-4.

### Sec. 10-73. Defecation of animals on public and private property; failure to remove and dispose of excreta.

(a)　　An owner, harborer, or other person having care, custody, or control of an animal commits an offense if he/she knowingly permits, or by insufficient control, allows the animal to defecate in the city on private property or on property located in a public place unless;

(1)　　The owner, harborer, or other person having care, custody, or control of the animal immediately and in a sanitary and lawful manner remove and dispose of, or caused the removal and disposal of, all excreta deposited on the property by the animal;

(2)     The property was owned, leased, or controlled by the owner, harborer, or person having care, custody, or control of the animal;

(3)     The owner or person in control of the property had given prior consent for the animal to defecate on the property; or

(4)     The animal was being used in official law enforcement activities.

(b)     This section does not apply to an animal that is specially trained to assist a person with a disability and that was in the care, custody, or control of that disabled person at the time it defecated or was otherwise present on private property or on property located in a public place

(c)     A person who violates this section is guilty of violation of this chapter.
(Ord. No. 1674, § 1, 1-25-05)

**Secs. 10-74--10-95. Reserved.**

**ARTICLE IV.**

**ESTRAYS\***

\*       **State Law References:** Estrays, V.T.C.A., Agriculture Code § 142.001 et seq.

**Sec. 10-96. Unattended estrays (livestock).**

(a)     It shall be unlawful for any person to allow an estray (livestock) to be unattended upon any public street, alley, thoroughfare or upon the property of another in the corporate city limits of the city.

(b)     The person having ownership or right to immediate control of such estray (livestock) shall have the burden to keep such estray (livestock) off the public streets, alleys and thoroughfares or the property of another in the city.
(Code 1974, § 3-40)

**Sec. 10-97. Impoundment.**

It shall be the duty of the animal control officer to take up any and all estrays (livestock) that may be found in and upon any street, alley or in or upon any unenclosed lot in the city, or otherwise to be found at large, and to confine such estrays (livestock) for safekeeping. Upon impounding an estray (livestock), the animal control officer shall prepare a notice of estray and file such notice in the "estray book" located in the office of the animal control officer. Each entry shall include the following:

(1)     The name and address of the person who notified the animal control officer of the estray (livestock).

(2)     The location of the estray (livestock) when found.

(3)     The location of the estray (livestock) pending disposition.

(4)     A description of the animal including its breed, color, sex, age, size and all marking of

Sec. 10-135. Confinement of dogs and cats held for observation.
Sec. 10-136. Quarantine by owner.
Sec. 10-137. Animals which have died of rabies.
Sec. 10-138. Duty of person knowing of animals exhibiting symptoms of rabies.
Secs. 10-139--10-160. Reserved.

Article VI. Impoundment

Sec. 10-161. Duty to impound.
Sec. 10-162. Disposition of impounded animal.
Sec. 10-163. Disposition of impounded animal being held on complaint.
Sec. 10-164. Removal of dogs and cats from confinement.
Sec. 10-165. Impoundment by citizen.
Sec. 10-166. Nursing baby animals.
Sec. 10-167. Injured or diseased animals.
Sec. 10-168. Adoption of dogs or cats.

# ARTICLE I.

## IN GENERAL

### Sec. 10-1. Purpose.

The animal control regulations as established in this chapter have been made for the purpose of promoting the health, safety, morals and general welfare of the city. This chapter contains standards regulating the use, type, location, maintenance, registration, confinement, destruction and harboring of certain animals. The intent of these regulations, prohibitions and provisions is to protect property values within the city, to enhance the quality of life of persons, pets and other animals, and to protect the general public from damage and injury which may be caused by unregulated animals.
(Code 1974, § 3-1)

### Sec. 10-2. Definitions.

The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Animal* means any living, vertebrate creature, domestic or wild, other than homo sapiens.

*Animal control officer* means an employee of the city designated by the city manager to supervise the operation and maintenance of the city animal shelter and to carry out and enforce the provisions of this chapter.

*Estray (livestock)* means domestic animals generally used or raised on a farm for profit or use, including, but not limited to, a stallion, horse, mare, gelding, filly, colt, mule, jinny, jack, jennet, sheep, goat or any species of cattle, but specifically excluding prohibited animals.

*Owner* means any person owning, keeping or harboring one or more animals. An animal shall be deemed to be owned by a person who shall harbor, feed or shelter such animal for more than three consecutive days.

*Pet animals* means and shall include dogs, cats, rabbits, rodents, birds, fish and any other species of animal, except prohibited animals, which are kept for pleasure rather than utility.

*Prohibited animals* means any animal prohibited in section 10-7.

*Rabies vaccination* means the vaccination of a dog, cat or other domestic animal with an antirabies vaccine approved by the state department of health and administered by a veterinarian licensed by the state.

*Residential premises* means any property zoned for, or utilized, as a multifamily, four-plex, tri-plex, duplex, single-family dwelling or mobile home.

*Running at large* means to be free of restraint as provided in section 10-61.

*Vicious animal* means any animal that bites or otherwise attacks, or by its behavior constitutes a physical threat to any human being or other animal, without provocation.
(Code 1974, § 3-2)
  **Cross References:** Definitions and rules of construction generally, § 1-2.

### Sec. 10-3. Slaughtering animals.

It shall be unlawful to slaughter or to maintain any property for the purpose of slaughtering any animal in the city.
(Code 1974, § 3-10)
  **Cross References:** Businesses, ch. 18; health and sanitation, ch. 42.
  **State Law References:** Authority to regulate, etc., V.T.C.A., Local Government Code § 215.072; slaughterhouses, V.T.C.A., Health and Safety Code §§ 433.023, 438.061.

### Sec. 10-4. Authority to destroy certain animals.

Any peace officer, health officer or animal control officer may kill any dog, cat or other animal suspected of having rabies and any vicious animal.
(Code 1974, § 3-19)
  **Cross References:** Rabies control, § 10-131 et seq.
  **State Law References:** Destruction of dogs, V.T.C.A., Health and Safety Code § 822.003; dangerous dogs, V.T.C.A., Health and Safety Code § 822.041 et seq.

### Sec. 10-5. Exceptions and exemptions not required to be negated.

In any complaint and in any action or proceedings brought for the enforcement of any provision of this chapter, it shall not be necessary to negate any exception, excuse, provision or exemption, which burden shall be upon the defendant.
(Code 1974, § 3-25)

### Sec. 10-6. Nonconforming uses under sections 10-100 and 10-104.

(a)     The owner or occupant of any premises on the effective date of this chapter keeping and maintaining any livestock in compliance with the provisions of section 10-100 in effect prior to the adoption of this chapter shall, on or before January 1, 1988, register such nonconforming use with the animal control officer on forms promulgated therefor, which registration shall state the name of such owner or occupant, a description of the nonconforming premises, the number and a description of all livestock kept and maintained on the date of such registration. Such nonconforming use as to the keeping and maintenance of such livestock, and only such livestock, may continue. No additional or other livestock may be substituted therefor and such nonconforming use shall be nontransferable to another owner or occupant of such premises. Any owner or occupant of premises which are nonconforming with section 10-104, as amended in this chapter, on the effective date of this chapter, and who does not register such nonconforming use prior to January 1, 1988, shall bring such premises

into compliance with the provisions of section 10-104 from and after January 1, 1988.

(b)    The owner or occupant of any premises on the effective date of this chapter keeping and maintaining any prohibited animals as defined in this chapter who registers, prior to January 1, 1988, the keeping and maintenance of such prohibited animals with the animal control officer on forms promulgated therefor, which registration shall state the name of such owner or occupant, a description of the premises where such prohibited animals are kept or maintained, the number and a complete description of all such prohibited animals maintained on the date of such registration, may continue to keep and maintain such prohibited animals until July 1, 1988, provided such prohibited animals are kept and maintained in conformity with the provisions of section 10-103 in effect prior to the adoption of this chapter. No additional or other prohibited animals may be kept or maintained by such registrant and only those prohibited animals being kept and maintained on the date of such registration may thereafter be kept and maintained until July 1, 1988. Any owner or occupant of a premises containing prohibited animals prior to the effective date of this chapter who shall not register such prohibited animals with the animal control officer on or before January 1, 1988, shall remove such prohibited animals from the corporate limits of the city no later than January 1, 1988.
(Code 1974, § 3-26)

## Sec. 10-7. Prohibited animals.

(a)    The animals which are prohibited for sale or possession include, but are not limited to, the following:

(1)    *Class reptilia:*

a.    Family helodermatidae (the venomous lizards) and all varanidae (monitor).

b.    Order ophidia, family biodae (boas, pythons, anacondas); family hydrophiidae (marine snakes); family viperidae (rattlesnakes, pit vipers and true vipers); family elapidae (coral snakes, cobras and mambas); family colubridae-dispholidus typus (boomslang); bioga dendrophila (mangrove snake) and kirtlandii (twig snake) only.

c.    Order crocodilia (such as crocodiles and alligators).

(2)    *Class aves:* Order falconiforms (such as hawks, eagles, falcons and vultures) and subdivision raptae (such as ostriches, rheas, cassowaries and emus).

(3)    *Class mammalia:*

a.    Order carnivores, the family felidae (such as lions, tigers, bobcats, jaguars, leopards and cougars), except commonly domesticated cats; the family canidae (such as wolves, dingos, coyotes, foxes and jackals), except commonly domesticated dogs; the family mustelidae (such as weasels, skunks, martins, minks, badgers); family procyonidae (racoon); family ursidae (such as bears).

b.    Order marsupialia (such as kangaroos, oppossums, koala bears, wallabies, bandicoots, and wombats).

c.    Order chiroptera (bats).

    d.      Order edentata (such as sloths, anteaters, and armadillos).

    e.      Order proboscidea (elephants).

    f.      Order primata (such as monkeys, chimpanzees, orangutans and gorillas).

    g.      Order rodentia (such as beavers, porcupines).

    h.      Order ungulata (such as antelope, deer, bison and camels).

(4)    *Class amphibia:* Poisonous frogs.

(b)    Prohibited animals shall also include nonpoisonous snakes of a species which reaches a length greater than six feet, those species of fish the possession of which is prohibited by state law, and pigs, including hogs or sows.

(c)    Prohibited animals shall not include birds kept or maintained for educational or rehabilitative purposes by persons holding permits therefor from the state department of parks and wildlife or the United States Department of Fish and Wildlife.
(Code 1974, § 3-2)

**Sec. 10-8. Tampering with traps and equipment.**

No person shall remove, alter, damage or otherwise tamper with a trap or equipment set out by the animal control officer.
(Code 1974, § 3-18)

**Sec. 10-9. Penalty for violations of chapter.**

Any person violating the terms and provisions of this chapter shall be deemed guilty of a misdemeanor and shall be punished as provided in section 1-12 of this Code. Each day that such violation continues shall be a separate offense. This penalty shall be cumulative of all other remedies. No fine imposed hereunder shall be less than $25.00.
(Code 1974, § 3-24; Ord. No. 1077, § V, 5-12-92)
    **State Law References:** Penalties, V.T.C.A., Health and Safety Code §§ 822.032, 822.034, 822.035, 822.045, 822.046.

**Secs. 10-10--10-35. Reserved.**

## ARTICLE II.

## ADMINISTRATION*

---
\*    **Cross References:** Administration, ch. 2.

---

**Sec. 10-36. Animal control officer--Duties.**

It shall be the duty of each animal control officer under the supervision of the director of environmental health to carry out all applicable provisions of this chapter and to pick up and impound all animals found to be in violation of this chapter.

# ARTICLES OF INCORPORATION

## OF

## TEMPLO YORUBA OMO ORISHA-TEXAS
### (A Non-Profit Corporation)

FILED
In the Office of the
Secretary of State of Texas

DEC 1 : 2004

Corporation Section

## ARTICLE ONE

The name of the Corporation is TEMPLO YORUBA OMO ORISHA-TEXAS ("the Corporation").

## ARTICLE TWO

The Corporation is a non-profit corporation.

## ARTICLE THREE

The period of its duration is perpetual.

## ARTICLE FOUR

The Corporation is organized exclusively for charitable, religious, educational, or scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

## ARTICLE FIVE

The street address of its initial Registered Office, and the name of its initial Registered Agent at this address, is as follows:

Jose R. Merced
203 Ironbridge Place
Euless, Texas 76040

Civil Action No. 4-06CV-891-A
**Exhibit 2**

## ARTICLE SIX

The number of initial Directors is four. The names and addresses of the initial directors are:

Jose R. Merced
203 Ironbridge Place
Euless, Texas 76040

Jonathan M. Merced
203 Ironbridge Place
Euless, Texas 76040

Omar Osuna
808 Rockwall Drive
Euless, Texas 76039

Sylvia L. Merced
808 Rockwall Drive
Euless, Texas 76039

## ARTICLE SEVEN

No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to its members, directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article Four hereof. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements), any political campaign on behalf of any candidate for public office.

## ARTICLE EIGHT

Notwithstanding any other provision of these Articles, the Corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code, or the corresponding provisions of any future Federal Tax Code, or (b) by a corporation, contributions to which are deductible under Section 170 (c)(2) of the Internal Revenue Code, or the corresponding section of any future Federal Tax Code

## ARTICLE NINE

Upon the Dissolution of the Corporation, assets shall be distributed for one or more exempt purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future Federal Tax Code, or shall be distributed to the federal government, or to a state or local government, for a public purpose. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization(s), as said Court shall determine, which are organized and operated for such purposes.

## ARTICLE TEN

The name and address of the Incorporator is:

Sharon M. Leal
408 W. 17th Street, Suite 101
Austin, Texas 78701-1207
(512) 474-2002

IN WITNESS WHEREOF, I have hereunto set my hand this fourteenth day of December, 2004.

_____
Sharon M. Leal, Incorporator



Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697

Geoffrey S. Connor
Secretary of State

# Office of the Secretary of State

December 14, 2004

Lawyer's Aid Service, Inc.
P. O. Box 848
Austin, TX 78767 USA

RE: TEMPLO YORUBA OMO ORISHA-TEXAS
File Number: 800425620

It has been our pleasure to file the articles of incorporation and issue the enclosed certificate of incorporation evidencing the existence of the newly created corporation.

Corporations organized under the Texas Non-Profit Corporation Act do not automatically qualify for an exemption from federal and state taxes. Shortly, the Comptroller of Public Accounts will be contacting the corporation at its registered office for information that will assist the Comptroller in setting up the franchise tax account for the corporation. If you need to contact the Comptroller about franchise taxes or exemption therefrom, you may contact the agency by calling (800) 252-1381, by e-mail to tax.help@cpa.state.tx.us or by writing P. O. Box 13528, Austin, TX 78711-3528. Telephone questions regarding other business taxes, including sales taxes, should be directed to (800) 252-5555. Information on exemption from federal taxes is available from the Internal Revenue Service.

Non-profit corporations do not file annual reports with the Secretary of State, but do file a report not more often than once every four years as requested by the Secretary. It is important for the corporation to continuously maintain a registered agent and office in Texas as this is the address to which the Secretary of State will send a request to file a periodic report. Failure to maintain a registered agent or office in Texas, failure to file a change to the agent or office information, or failure to file a report when requested may result in involuntary dissolution of the corporation. Additionally, a non-profit corporation will file documents with the Secretary of State if the corporation needs to amend one of the provisions in its articles of incorporation.

If we can be of further service at any time, please let us know.

Sincerely,

Corporations Section
Statutory Filings Division
(512) 463-5555
Enclosure

*Curriculum Vitae*
**Michael Atwood Mason**
**1850 Irving Street, N.W.**
**Washington D.C. 20010**
**(202) 462-1644**
**masonm@si.edu**

## Education

1997   Ph.D.,   Folklore (double minor in anthropology of religion). Dissertation: "Practicing *Santeria*, Performing the Self: The Social Construction of Subjectivity in Humans and Gods in an Afro-Cuban Religion." Indiana University.

1992   M.A.,   Folklore, Indiana University.

1989   B.A.,   *Magna Cum Laude* and Phi Beta Kappa, American Studies and Certificate in Folklore, University of Oregon.

1984–1986   St. John's College (Santa Fe, New Mexico), Liberal Arts.

## Museum Experience

1994-2007   Anthropologist and exhibit developer, National Museum of Natural History, Smithsonian Institution.

1992-94   Folklore Specialist, Anacostia Museum, Smithsonian Institution.

## Field Research

1996-2007   "The Legacy of the Afro-Cuban *Cabildos*: Ethnic Formations and Contemporary Cultural Practices." Fieldwork and archival research on the history of Afro-Cuban mutual aid societies. Collaboration with the Office of the Historian of the City of Havana.

1992-97   Research trips to Havana, Cuba, exploring performance and the social construction of lived experience.

1993   Latino and Ghanaian community in the Washington D.C. metropolitan area for Anacostia Museum's Black Mosaic Project.

1990   Folk Arts Survey of District of Columbia's *Latino* communities for the DC Commission on the Arts.

1989   Three month project focused on two brothers who are Episcopal priests and their narratives about entering the ministry.

1988-89   One year's research examining a group of Episcopal faith healers and their testimonial narratives in Eugene, Oregon.

1987-2004   Ongoing project focusing on performance, structure and agency, and personal experience and identity in Afro-Cuban *Santeria* in Chicago, Philadelphia, and Washington D.C., and Havana and Matanzas, Cuba.

## University Teaching

1992-95      Professorial Lecturer on African Religions, African Diaspora Religions, and Spirit Possession and Trance, Department of Philosophy and Religion, The American University, Washington, D.C.

1990-1991    Associate Instructor, Introduction to Folklore, Folklore Institute, Indiana University.

## Editorial Experience

1991-92      Editorial Assistant, *Taoist Resources* (published by the Indiana University East Asian Studies Center)

1991         Edited special issue of *Folklore Forum* titled *Folk Religions of the African Diaspora*.

1990-92      Publisher, Folklore Publications Group (Trickster Press and *Folklore Forum*).

1990-91      Editor of the *Folklore Forum*.

1989-90      Assistant Publisher, FPG, Assistant Editor of *Folklore Forum*.

## Book

2002         *Living Santería: Rituals and Experiences in an Afro-Cuban Religion*. Washington, D.C.: Smithsonian Institution Press. Nominated for the Victor Turner Prize for Ethnographic Writing.

## Publications

In press      The Presence of the African Powers: Sacrifice and Socialization in Afro-Cuba Santería, in *The Art of Sacrifice*, ed. Christine Mullen Kreamer and Martha Anderson.

In press      "He Who Knows Does Not Die Like He Who Does Not Know": Experience and a Diviner's Discourse in Cuban-American *Santería*. To appear in a collection of essays in honor of Pierre Verger, ed. O. Yai.

In press      Searching for Thunder: A Conversation about Shangó (with E. Pichardo). In *Oba Kòso: The Multiple Images of Sango in West Africa and the African Diaspora*, ed. J. Tishken.

In press      Santería. In *International Encyclopedia of the Social Sciences, 2nd Edition*, ed. W. Darity *et al*. Farmington Hills, Michigan: Macmillian Reference.

2007         "The Blood That Runs Through the Veins": The Creation of Identity and a Client's Experience of Cuban-American Santería *dilogún* divination. In *The Performance Studies Reader* (second edition), ed. H. Bial, pp. 107-117. London: Routledge.

2006         What Do Dogs Mean? What Do Dogs Do? Symbolism, Instrumentality, and Ritual in Afro-Cuban Religion (with Lynn M. Snyder). In *Dogs and People in Social, Working, Economic or Symbolic Interaction (Proceedings of 9th ICAZ Conference, Durham, 2002)*, eds. L. Snyder and E. Moore, pp. 49-61. London, England: Oxbow Books.

2004         Initiation in Cuban Santería. *Anthropology and Humanism* 29(2):190-193.

2003         "The Blood That Runs Through the Veins": The Creation of Identity and a Client's Experience of Cuban-American Santería *dilogún* divination. In *The Performance Studies Reader*, ed.H. Bial, pp. 97-107. London: Routledge.

2002         Afro-Cuban Religion Unites Practitioners After September 11. *Anthropology News* 43(1):11.

2001         Reflections on *African Voices* at the Smithsonian's National Museum of Natural History (with Mary Jo Arnoldi and Christine Mullen Kreamer) *African Arts* 34 (2):16-

35, 94.

2001    *African Voices*. Smithsonian Project Brings Africa Alive. *Anthronotes* 22 (3):15-19.

2000    *Ritmos de Identidad: Fernando Ortiz's Legacy and the Howard Family Collection of Percussion Instruments* (with Miguel Bretos and Marvette Pérez) (exhibition catalogue). Washington, D.C.: Smithsonian Center for Latino Initiatives.

2000    Psychotherapy with Members of Latino/Latina Religions and Spiritual Traditions (with María Cecilia Zea and Alejandro Murgia), in *Psychotherapy and Religious Diversity: A Guide for Mental Health Professionals*, eds. P.S. Richards and A. Bergin, pp. 397-420. Washington, D.C.: American Psychological Association Books.

2000    Ritual Earth: Understanding Ourselves Through Nature. In *Forces of Change: A New View of Nature*. Washington, D.C.: Smithsonian Institution in association with National Geographic.

1994    "I Bow My Head to the Ground": The Creation of Bodily Experience in a Cuban-American *Santería* Initiation. *Journal of American Folklore* 107 (423):23-39.

1993    "The Blood That Runs in the Veins": The Creation of Identity and a Client's Experience of Cuban-American *Santería Dilogún* Divination. *The Drama Review* 37 (2):119-130.

1991    Book review: Jim Wafer's *Taste of Blood: Spirit Possession in Brazilian Candomblé* and Karen McCarthy Brown's *Moma Lola: A Vodou Priestess in Brooklyn*, *Folklore Forum*, Volume 23:1/2.

1989    Book review: Michael Jackson's *Paths Toward a Clearing*, *Folklore Forum* Volume 22:1/2.

1986    Translation: "The Heights of Macchu Picchu," (Pablo Neruda's epic poem) and a series of poems, *St. John's Review*.

## Invited Lectures and Conference Papers

2001    Embodied Images: Babalú-Ayé as a Representation of Suffering in Contemporary Cuba. Institute for Liberal Arts, Emory University, 27 March.

2000    Sexwork, Sacrifice, and the Paradox of Agency in Contemporary Afro-Cuban *Santería*. University of Maryland Committee on African and the Atlantic panel on Race, Politics, and Aesthetics in Contemporary Cuba, 16 October.

1999    Afro-Cuban *Cabildos'* Role in Defining the Social Landscape in the Nineteenth Century. Smithsonian Institution's conference *Knowing Each Other Without Borders*, 10 March.

1998    Imagining Emotion among Afro-Cuban *Santería* Practitioners. American Anthropological Association Meetings, 6 December, as part of a special panel "Anthropologists in '*El País de las Maravillas*': Migration, Boundaries, and Belonging in Contemporary Cuba."

1998    Binding a Lover: Agency, Influence, and Passion in Afro-Cuban *Santería*. American Ethnological Society Meetings, 9 May.

1997    "I am a Cuban of African Decent": Slavery and Memory as a Cultural Resource in Revolutionary Cuba. Memory and the Atlantic Slave Trade Conference, University of Chicago, 20 April.

1995    Syncretism and the Imagination of Power: The Poetics of *Aché* in Afro-Cuban *Santería*. The American Anthropological Association Conference's Symposium on

Michael Atwood Mason
Vacancy Announcement # 07-MP-7175

Religious Revitalization and Syncretism in Africa and the Americas, organized by S. Greenfield and A. Droogers, 21 November.

1994    La presencia de las Potencias africanas: La socialización de los Orichas en la Santería afrocubana (The presence of the African powers: The socialization of the Orichas in Afro-Cuban Santería). Third International Symposium on Afro-America and its Religious Culture, University of Puerto Rico, Río Piedras, 23 March.

1993    "My Pants are Bloody": Negotiation and Identity in Cuban-America *Santería*. National Museum of American History Colloquium Series, Smithsonian Institution, 3 August.

1993    Collecting the Community: Representations, Self-Representation, and Stereotypes in the Anacostia Museum's Black Mosaic Project. Smithsonian Forum on Material Culture.

1992    "Los egun parieron a los Ocha": sexo y poder social en el espiritísmo y la santería (The dead gave birth to the Oricha: Gender and social power in spiritism and Santería), "The Presence of Africa in America," Center for Anthropology, Academy of Sciences, Havana, Cuba.

1992    "The Blood That Runs in the Veins": Afro-Cuban *Santería*, Divination, and Creation of Subjectivity. The American Folklore Society Conference.

1992    "The Head Carries the Body": Afro-Cuban *Santería* Divination and the Creation of Subjectivity. Indiana University Latin American and Caribbean Studies Program.

1989    *La Rogacion de la Cabeza*: Cleaning the Head and Ordering the World in Cuban-American Santería. Indian University Folklore Students Association Colloquium Series.

## Research Fellowships, Grants, and Awards

1997    Wenner Gren Foundation for Anthropological Research Grant for "The Legacy of the Afro-Cuban *Cabildos*" (with Theresa Singleton).

1997    Smithsonian Institution's Scholar Studies Committee Grant for "The Legacy of the Afro-Cuban *Cabildos*" (with Theresa Singleton).

1992    Johns Hopkins School of Advanced International Studies, Cuban Studies Program Fellow for field research in Cuba.

1991-92    Foreign Language and Area Studies Scholarship for Yoruba, awarded by the U.S. Department of Education through the IU African Studies Program.

1989-90    Eric Englund Scholar for Graduate Study of American Culture, awarded by the University of Oregon.

1986    Poetry Scholarship and Translation Prize, St. John's College.

## Exhibitions

2007    Exhibit Developer and project manager, *Discovering Rastafari!* Smithsonian National Museum of Natural History, opening in November

2004    Exhibit Developer (with Marvette Pérez), *Azúcar: The Life and Music of Celia Cruz*, Smithsonian National Museum of American History, opened in 2004.

2003-2004    Project manager and exhibit developer, *Sikhs: Legacy of the Punjab*, opened 2004.

2000-2003    Curator, inaugural exhibition at the new Maryland Museum of African-American History and Culture, Baltimore, Maryland. Opens 2004.

Michael Atwood Mason
Vacancy Announcement # 07-MP-7175

| 2002 | Curator and project manager, *Discover Africa!* in Focus Gallery of African Voices Exhibition, Smithsonian National Museum of Natural History. |
| 2001 | Curator, *Manifestations of the Spirit:  Photographs of Afro-Brazilian Religion by Phyllis Galembo* in Focus Gallery of *African Voices*. |
| 2001 | Project Advisor, *At the Crossroads:  Afro-Cuban Orisha Arts in Miami* at the Historical Museum of Southern Florida. |
| 2000 | Curator (with Miguel Bretos and Marvette Pérez), *Ritmos de Identidad:  Fernando Ortiz's Legacy and the Howard Family Collection of Percussion Instruments* at the Smithsonian's Arts and Industries Building, sponsored by the Smithsonian Center for Latino Initiatives. |
| 2000 | Curatorial consultant, *Against Human Dignity:  The Atlantic Slave Trade* at the Mariner's Museum, Newport News, Virginia. |
| 1994-1999 | Curator (with Mary Jo Arnoldi and Christine Mullen Kreamer), *African Voices* at Smithsonian National Museum of Natural History, a permanent exhibition. |
| 1999 | Project Manager, *Peoples of the Arctic* at the Smithsonian National Museum of Natural History. |
| 1992-1994 | Curator (with Portia James), *Black Mosaic:  Immigrants of African Descent in Washington, D.C.* at the Smithsonian Anacostia Museum. |

**Public Lectures, Panels, Docent Trainings, Teacher Trainings, and Museum Workshops**

| 2005 | The Truth about Santería.  University of Maryland |
| 2004 | Presenter for "Nuestra Música" program.  Smithsonian Folklife Festival. |
| 2003 | Living Santería:  An Introduction.  National Museum of Natural History. |
| 2002 | Living Santería:  An Afro-Cuban Religion Goes Global.  National Museum of Natural History. |
| 2002 | Curatorial Voice and Public Need in Exhibition Development.  Seminar panel sponsored by LORD Cultural Resources and Smithsonian National Museum of Natural History, Washington, D.C. |
| 2001 | Suffering on the Road to Rincón:  The Saint Lazarus Festival in Contemporary Cuba.  Smithsonian National Museum of Natural History. |
| 2001 | The African Diaspora.  Docent training, Smithsonian National Museum of Natural History. |
| 2001 | Electronic field trips from *African Voices* exhibition.  Smithsonian National Museum of Natural History. |
| 2001 | The Struggle for Freedom in Africa and the Diaspora.  Teacher Training, American Forum for Global Education (New York, New York). |
| 2000 | Understanding the Cuban Film Context. Smithsonian National Museum of African Art. |
| 2000 | *African Voices:*  A Consensus on Representing Africa to Americans.  National Summit on Africa (Washington, D.C.) |
| 2000 | Teaching Africa in World History.  Prince George's County Public Schools (MD). |
| 2000 | Participant, Bi-National Partnerships for South African National Cultural Heritage Training and Technology Program, Smithsonian Institution. |
| 2000 | Religions of the African Diaspora.  Smithsonian National Museum of Natural History. |
| 2000 | The Atlantic Slave Trade.  Smithsonian National Museum of Natural History. |

Michael Atwood Mason
Vacancy Announcement # 07-MP-7175

| 1999 | Creating the *African Voices* Exhibition.  Smithsonian National Museum of Natural History. |
| 1999 | Docent trainings in *African Voices* exhibition for Visitor Information Unit, Smithsonian Institution. |
| 1999 | African Culture in the Americas.  Virginia Foundation for the Humanities Summer Institute. |

**Consultancies**

| 2003 | Collaborated with National Geographic Film and Television to create a 20-minute feature on Santería for their program *Taboo*. |
| 1998 | Collaborated with CNN's news magazine *Impact* to create a 20-minute feature on Santería in Havana as part of their coverage of the Papal visit to Cuba. |
| 1994-2003 | Provided expert testimony related to Afro-Cuban religions in various court cases. |

**Membership in Professional Associations**
African Studies Association
American Anthropological Association
American Ethnological Society
American Folklore Society.
Phi Beta Kappa Honor Society.

**Language Skills**
English:  Native Speaker
Spanish:  Fluency
Chinese:  Basic Mandarin skills
French:  Basic skills
Italian:  Reading knowledge
Portuguese:  Basic skills
Yoruba:  Basic skills

Michael Atwood Mason
Vacancy Announcement # 07-MP-7175