ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2009 SEP 30 PM 3:00

CLERK OF COURT

| | | |
|---|---|---|
| JOSE MERCED, PRESIDENT, TEMPLO YORUBA OMO ORIHSA TEXAS INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 4:06-cv-00891-A |
| THE CITY OF EULESS, | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ............................................................................................................................1

REASONS FOR GRANTING THE MOTION ................................................................................2

I.      The amount of fees and expenses requested is reasonable. ..................................................2

        A.      The amount requested is reasonable under the lodestar method ............................3

        B.      The amount requested is reasonable under the *Andersen factors*. ........................7

CONCLUSION ...............................................................................................................................12

APPENDIX (Filed as Attachment)

      Exhibit A:  Summary of Requested Fees and Expenses

      Exhibit B:  Detailed Attorney Billing Records

      Exhibit C:  Plaintiff-Appellant's List of Non-Taxable Expenses

      Exhibit D:  Opinion in *Merced* v. *Kasson*, 577 F.3d 578 (5th Cir. 2009)

      Exhibit E:  Copy of Fifth Circuit Docket

      Exhibit F:  Declaration and Resume of Gene H. Schaerr

      Exhibit G:  Declaration and Resume of Eric Rassbach

      Exhibit H:  Declaration and Resume of Luke Goodrich

      Exhibit I:  Declaration and Resume of Hannah C. Smith

      Exhibit J:  Declaration and Resume of Lori Windham

      Exhibit K:  Affidavit and Resume of Douglas Laycock

      Exhibit L:  Affidavit and Resume of John McKetta

      Exhibit M:  Fifth Circuit Order Granting Fee Request

# TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*Arthur Andersen & Co.* v. *Perry Equip. Corp.*,
945 S.W.2d 812 (Tex. 1997) ............................................................................................. 8

*Barr* v. *City of Sinton*,
--- S.W.3d ----, 2009 WL 1712798 (Tex. Jun. 19, 2009) ............................................... 6

*Blum* v. *Stenson*,
465 U.S. 886 (1984) ......................................................................................................... 4

*Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*,
508 U.S. 520 (1993) ......................................................................................................... 9

*City of Burlington* v. *Dague*,
505 U.S. 557 (1992) ......................................................................................................... 3

*Dillard Dept. Stores, Inc.* v. *Gonzales*,
72 S.W.3d 398 (Tex. App.-El Paso 2002, pet. denied) ................................................ 11

*Employment Division* v. *Smith*,
494 U.S. 872 (1990) ......................................................................................................... 9

*Fluorine On Call, Ltd.* v. *Fluorogas Ltd.*,
380 F.3d 849 (5th Cir. 2004) ...................................................................................... 3, 8

*Green* v. *Adm'rs of Tulane Educ. Fund*,
284 F.3d 642 (5th Cir.2002) ........................................................................................... 4

*Guam Society of Obstetricians & Gynecologists* v. *Ada*,
100 F.3d 691 (9th Cir. 1996) .......................................................................................... 4

*Hensley* v. *Eckerhart*,
461 U.S. 424 (1983) ..................................................................................................... 6, 7

*Mathis* v. *Exxon Corp.*,
302 F.3d 448 (5th Cir. 2002) ......................................................................................... 2

*Merced* v. *Kasson*,
577 F.3d 587 (5th Cir. 2009) ................................................................................. 2, 6, 8

*Mid-Continent Cas. Co.* v. *Chevron Pipe Line Co.*,
205 F.3d. 222 (5th Cir. 2000) ........................................................................................ 3

*Southwestern Bell Tel. Co. v. El Paso,*
  346 F.3d 541 (5th Cir. 2003) .................................................................................. 2

*Toshiba Machine Co., Am. v. SPM Flow Control, Inc.,*
  180 S.W.3d 761 (Tex.App.-Fort Worth 2005, pet. granted, judgm't vacated w.r.m.) .......... 3, 11

**Statutes**                                                                                      **Page(s)**

42 U.S.C. § 1988 ........................................................................................................ 2, 10

TEX. CIV. PRAC. & REM. CODE § 110.005(a) ........................................................... 10

## **INTRODUCTION**

Plaintiff-Appellant José Merced respectfully moves this Court for an order requiring Defendants to pay reasonable attorney's fees in the amount of $245,321.25. This motion seeks attorney's fees and costs only for those services provided by attorneys from the Becket Fund for Religious Liberty and Prof. Douglas Laycock. Merced is filing a separate fee petition for fees and costs for services provided by John Wheat Gibson, P.C. before this Court. The two motions are cumulative; the total fee award should include the District Court fees sought in the other motion and the appellate fees sought in this motion. The Fifth Circuit has already granted Merced's motion for appellate fees; the only remaining question is the exact amount of those fees. *See* App. 104[1] (Fifth Circuit order granting motion for fees and remanding to this Court for calculation).

Attached in support of this Brief are the following exhibits:

Exhibit A:  Summary of Requested Fees and Expenses

Exhibit B:  Detailed Attorney Billing Records

Exhibit C:  Plaintiff-Appellant's List of Non-Taxable Appellate Expenses

Exhibit D:  Opinion in *Merced* v. *Kasson*, 577 F.3d 578 (5th Cir. 2009)

Exhibit E:  Copy of Fifth Circuit Docket

Exhibit F:  Declaration and Resume of Gene H. Schaerr

Exhibit G:  Declaration and Resume of Eric Rassbach

Exhibit H:  Declaration and Resume of Luke Goodrich

Exhibit I:  Declaration and Resume of Hannah C. Smith

Exhibit J:  Declaration and Resume of Lori Windham

---

[1] "App." herein refers to Plaintiff's Appendix in Support of Motion for Attorneys' Fees, filed as an attachment pursuant to Local Rule 7.1(i).

1

Exhibit K:  Affidavit and Resume of Douglas Laycock

Exhibit L:  Affidavit and Resume of John McKetta

Exhibit M:  Fifth Circuit Order Granting Fee Request

The fees, costs, and expenses requested are summarized in the following table, and are also set forth in Exhibit A:

| | |
|---|---|
| Attorney Eric C. Rassbach | $101,103.75 |
| Attorney Hannah C. Smith | $21,612.50 |
| Attorney Lori H. Windham | $90,355.00 |
| Attorney Luke W. Goodrich | $21,750.00 |
| Attorney Douglas Laycock | $10,500.00 |
| Total Fees: | $245,321.25 |
| Total Untaxed Expenses: | $1,976.27 |
| **Total Compensation Requested** | **$247,297.52** |

## REASONS FOR GRANTING THE MOTION

**I.  The amount of fees and expenses requested is reasonable.**

The amount of fees requested is reasonable under Texas law. "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis* v. *Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Here, this Court's decision rested solely on the TRFA claim, so Merced has petitioned for fees under Texas law.[2]  *See Merced* v.

---

[2] Merced may also seek fees under 42 U.S.C. § 1988, since his case involved both constitutional and statutory claims arising from the same nucleus of facts. *See Southwestern Bell Tel. Co.* v. *El Paso*, 346 F.3d 541 (5th Cir. 2003). Both federal and Texas courts use the lodestar method, *see infra*, therefore the choice of fee provision will not alter the calculation.

2

*Kasson*, 577 F.3d 587, 595 (5th Cir. 2009).

Texas courts have relied on the "lodestar" method to determine the amount of a reasonable fee award. *See, e.g., Toshiba Machine Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782-83 (Tex.App.-Fort Worth 2005, pet. granted, judgm't vacated w.r.m.) ("[o]ne method of computing a reasonable fee is the 'lodestar' method, or 'the product of reasonable hours times a reasonable rate.'") (quoting *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992)). The Fifth Circuit also applies the lodestar method to claims arising under Texas law. *See, e.g., Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 867 (5th Cir. 2004) (treating lodestar as guide for reasonable fee amount); *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d. 222, 232 (5th Cir. 2000) (courts must look to the lodestar in determining reasonableness).

### A.  The amount requested is reasonable under the lodestar method.

The lodestar is "the product of reasonable hours times a reasonable rate." *Dague*, 505 U.S. 557, 559-60 (1992). Here, the lodestar represents a reasonable and appropriate fee. That figure produces a fee award of $211,360.00, calculated using the following rates and hours:

- Attorney Eric C. Rassbach worked 204.25 hours at $495.00 per hour, totaling $101,103.75.

- Attorney Hannah C. Smith worked 45.50 hours at $475.00 per hour, totaling $21,612.50.

- Attorney Lori H. Windham worked 265.75 hours at $340.00 per hour, totaling $90,355.00.

- Attorney Luke W. Goodrich worked 58 hours at $375.00 per hour, totaling $21,750.00.

- Attorney Douglas Laycock worked 21 hours at $500.00 per hour, totaling $10,500.00.

3

*1.     The hourly rates sought are reasonable.*

The hourly rates sought for Merced's attorneys are not only comparable to the standard rates charged by attorneys of similar skill, experience, and reputation in the relevant community, they are below those rates.

"'[R]easonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community." *Blum* v. *Stenson*, 465 U.S. 886, 895 (1984). *See also Green* v. *Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir.2002) (same). The hourly rates sought by Merced are actually *below* this level and therefore well within reason. McKetta Decl., App. 99-100; Schaerr Decl., App. 63-64 (rates requested by Merced's attorneys are below market rates of attorneys with comparable skill in the Texas and Washington, DC legal markets).

When calculating an award of attorney's fees, a court should consider "the prevailing market rate[] in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel . . . ." *Blum*, 465 U.S. at 895-96. Where a case is of a complex and specialized nature, requiring assistance that is not available locally, a plaintiff is justified in hiring an out-of-town specialist, who may charge a higher rate. *See, e.g., Guam Society of Obstetricians & Gynecologists* v. *Ada*, 100 F.3d 691, 702 (9th Cir. 1996) (awarding attorneys "customary and ordinary" New York-level fees because of their specialized expertise, despite the fact that the local Guam market rates were lower). The need for specialization may shift the relevant market from a local forum to that of a city where that specialization is available.

In this case, just such a specialization was required. Merced sought counsel with substantial experience in specialized religious liberty litigation. Professor Laycock successfully argued the only similar reported federal case—the *Lukumi* case—to the United States Supreme Court in 1993, and is well-known as one of the top few religious liberty scholars in the nation.

4

McKetta Decl., App. 99-100. Becket Fund attorneys are also known as national experts in religious liberty cases generally, and in First Amendment and state Religious Freedom Restoration Act cases in particular. Schaerr Decl., App. 62-63. Euless acknowledged the specialized expertise required by bringing in Marci Hamilton, a nationally known expert from New York City, to file lengthy petitions for panel rehearing and rehearing en banc.

Merced's counsel have each submitted declarations demonstrating their respective experience, expertise, and background that make the rates indicated above appropriate. *See* Ex. G–K, App. 67-97. Merced has also submitted the declaration of an experienced religious freedom attorney attesting to the reasonableness of the rates submitted by counsel, especially for First Amendment litigation, *see* Schaerr Decl., App. 60-64, and the declaration of an experienced Texas attorney attesting to the reasonableness of the rates in the local community, *see* McKetta Decl., App. 99-100.

These declarations show that Merced's attorneys are highly distinguished, having graduated from top law schools such as Harvard, the University of Chicago, and Brigham Young University. *See* Rassbach Decl., App. 69; Smith Decl., App. 77; Goodrich Decl., App. 74; Windham Decl., App. 81; Laycock Resume, App. 88. Three of the attorneys worked at major law firms in Washington and Houston, including Williams & Connolly, Sidley Austin, Winston & Strawn, and Baker Botts. *See* Schaerr Decl., App. 62; Rassbach Decl., App. 68. Four of the attorneys have federal clerkship experience, including one who clerked twice for the United States Supreme Court, and another who clerked for leading religious liberty scholar and Tenth Circuit Judge Michael McConnell. *See* Rassbach Decl., App. 68; Goodrich Decl., App. 74; Smith Decl., App. 77-78; Laycock Resume, App. 89. Attorneys of similar qualifications and experience working in the private sector would charge ***more*** than the rates per hour charged by

5

the attorneys in this case. *See* Schaerr Decl., App. 63-64. Not only are these rates reasonable for Washington, D.C., they are in line with the rates charged by highly qualified and experienced counsel in Tarrant County. *See* McKetta Decl., App. 99-100.

In sum, the hourly rates sought for Merced's counsel in this case are well within a reasonable range, especially for those with unique and special expertise in constitutional law and state RFRA litigation.

        2.    *The hours worked are reasonable.*

Merced seeks recovery for the reasonable total of 594.5 attorney hours for services rendered by Becket Fund attorneys and Douglas Laycock litigating this case.[3] An itemized list of the hours spent by each attorney is included in the attached Exhibit B. The reasonableness of the attorney hours claimed is evident given the complexity, scope and difficulty of the case, the work performed, the reductions made, and the result achieved. *Hensley* v. *Eckerhart*, 461 U.S. 424, 433-35 (1983).

As this Court is aware, the case concerned complex and difficult issues of statutory and constitutional law. Federal courts had not yet applied TRFA at the time of trial in this case, and the first Texas Supreme Court decision interpreting the statute was not handed down until long after trial, full briefing on appeal, and oral argument. *See Merced*, 577 F.3d at 587-88 (discussing *Barr* v. *City of Sinton*, --- S.W.3d ----, 2009 WL 1712798 (Tex. Jun. 19, 2009)). Moreover, because it was unclear whether this case would be decided under TRFA or the Free Exercise clause, both parties argued complex First Amendment and Equal Protection issues. *See* Merced's Opening Brief, Ct. App. Dkt. No. 08-10358 (filed Sept. 29, 2008) (25 pages on constitutional issues); Euless' Response Brief, Ct. App. Dkt. No. 08-10358 (filed Oct. 24, 2008)

---

[3] Professor Laycock also has 7.1 hours in the District Court (6.2 hours before the trial and .9 hours after the remand). For the convenience of the Court, those hours are included here with his

(29 pages on constitutional issues).

The attorney work on behalf of Merced, as reflected in the task-based statement in Exhibits C, is of the type ordinarily expected to obtain the result achieved. *See* Schaerr Decl., App. 63; Rassbach Decl., App. 69-70. Every hour for which compensation is sought by this motion is amply supported by the sworn declarations of counsel and the attached task-based itemized statements of fees and expenses. Moreover, Merced's attorneys have endeavored in good faith to exclude from the fee request "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The Becket Fund's National Litigation Director examined the billing records of each of the attorneys who spent time on the case and eliminated from this fee request hours that were duplicative, unreasonable, or otherwise non-billable. *See* Rassbach Decl., App. 69. Merced's counsel also exercised billing judgment by seeking a rate lower than the rate in any relevant market, utilizing research from summer associates still in law school where appropriate (and not billing for their time), and not billing for paralegal time. *Id.* App. 69-70.

In sum, in light of the excellent results achieved, the novelty and complexity of the case, the exercise of sound billing judgment, and the reasonableness of the hours worked in relation to the complexity of the case, Merced should be compensated under the lodestar method for all attorney time for which he seeks recovery.

**B.     The amount requested is reasonable under the *Andersen* factors.**

In addition to the lodestar method, the Texas Supreme Court has outlined eight relevant factors for courts to consider when determining the reasonableness of an attorney's fee award:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

---

hours in the Court of Appeals.

2. the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Fluorine On Call, Ltd.* v. *Fluorogas Ltd.*, 380 F.3d 849, 867 (5th Cir. 2004) (quoting *Arthur Andersen & Co.* v. *Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). Applied to this case, each of these factors indicates that the fee requested is reasonable, and, if anything, less than might have been requested.

>   1.  *Time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly.*

The time and labor required for this case—around 600 hours of attorney time—was very reasonable, especially considering the novelty and difficulty of the questions involved. As discussed above, this was the first TRFA appeal before the Fifth Circuit, and the Texas Supreme Court had not yet decided any TRFA cases at the time of briefing and argument. The Fifth Circuit wrote at length about the issues, publishing a 26-page opinion, one that Euless deemed so novel that it filed two lengthy petitions for rehearing. *See, generally, Merced* v. *Kasson*, 577 F.3d 587; Euless' Pet. for Rehearing, Ct. App. Dkt. No. 08-10358 (filed Aug. 14, 2009); Euless' Pet. for Rehearing *En Banc*, Ct. App. Dkt. No. 08-10358 (filed Aug. 14, 2009). The lack of existing authority under TRFA rendered the questions in this case particularly novel and

complex.

Moreover, because of the uncertainty surrounding TRFA, Merced also brought a claim under the Free Exercise Clause of the U.S. Constitution. Given the lack of guidance from the Supreme Court on key free exercise issues—such as when a statute is "neutral" and "generally applicable" under *Employment Division* v. *Smith*, 494 U.S. 872 (1990)—free exercise claims are often especially complex. This case was no exception.[4]

Finally, the fact pattern of the case is also unique, involving facts resembling something the federal courts have seen only once before, in the *Lukumi* case decided by the Supreme Court in 1993. *Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520 (1993). The City vigorously insisted that *Lukumi* was distinguishable, so that the facts here were unprecedented. In short, given the complexity, novelty, and uncertainty of the underlying legal claims, the time, labor, and skill required to litigate this case were extraordinary.

2.  *The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.*

As set forth in the Rassbach Declaration, App. 69, Merced's attorneys were required to turn down other litigation in order to take on this appeal. The nearly 600 hours spent working on this case were hours that could not be spent on other matters.

3.  *The fee customarily charged in the locality for similar legal services.*

As set forth in the Schaerr Declaration, App. 60-64, attorneys who specialize in religious freedom law are "rare," in part because that specialty involves such complex questions of constitutional law. Moreover, as "the leading 'boutique' law firm in the United States specializing in religious freedom law," the Becket Fund's attorneys "are all the more specialized." *Id.* at 63. Thus, there is no easy answer for what the "customary" rate in the

---

[4] *Cf.* Euless' Pet. for Rehearing *En Banc*, Ct. App. Dkt. No. 08-10358 (filed Aug. 14, 2009)

9

locality for "similar legal services" would be.

The best analogy are fees charged by firms of national scope that engage in complicated religious liberty litigation, such as Sidley Austin and Winston & Strawn. *See id.* 63-64. The fee rates requested here are *below* those charged by such firms. *Id.*

Similarly, as set forth in the McKetta Declaration, App. 99-100, it is not uncommon for attorneys litigating in Tarrant County, Texas (where this case arose), to charge in excess of $500 per hour. Given the special expertise of the attorneys involved in this case, "a significantly higher hourly rate" would be reasonable (*id.* App. 99-100)—yet no attorney has requested more than $500, and all but 21 of the 594 hours have been submitted at *less* than $500 per hour.

4. *The amount involved and the results obtained.*

The amount of money involved is not relevant to this case, which concerned Merced's religious liberty interests. The result obtained was a complete vindication of his rights.

5. *The time limitations imposed by the client or by the circumstances.*

This factor is not relevant to this motion, which involves fees for the appeal. This was a factor in the District Court that is relevant to Merced's request for fees in that court.

6. *The nature and length of the professional relationship with the client.*

Merced's attorneys did not know of Merced prior to this litigation. The Becket Fund was retained only after trial. Because Merced was unable to pay additional legal fees on appeal, The Becket Fund agreed to represent him invoicing for expenses only, subject to the possibility of attorney's fees under TEX. CIV. PRAC. & REM. CODE § 110.005(a), 42 U.S.C. § 1988, and similar statutes.

---

(arguing that even the application of TRFA in this case raised multiple constitutional issues).

> 7. *The experience, reputation, and ability of the lawyer or lawyers performing the services.*

As detailed in the Schaerr Declaration, App. 62-63, and the McKetta Declaration, App. 100, the attorneys representing Merced are among the top few religious liberty practitioners in the country, with experience, reputation, and ability unique in this area of the law.

> 8. *Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.*

Here, the fee was completely contingent upon a successful result and a court award of fees. Merced's counsel worked free of charge, with reimbursement from Merced only for out-of-pocket expenses. The uncertainty of collection at the time the representation began was therefore very high. "Texas courts consistently allow the use of a multiplier based upon the contingent nature of a fee under Texas statutes allowing recovery of attorney's fees." *Toshiba Machine*, 180 S.W.3d at 783 (citing *Dillard Dept. Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 413 (Tex. App.-El Paso 2002, pet. denied)). Even a 1:1 multiplier—less than that awarded in Toshiba—would add more than $245,000 to this fee request. Yet Merced has not asked for a multiplier. This fact alone guarantees the reasonableness of the requested fees; it discounts the fees so dramatically as to outweigh any plausible challenge the City might make to particular hours or rates.

\* \* \*

None of the foregoing *Andersen* factors indicates that there should be a deviation from the amount calculated using the lodestar. If anything, they suggest that there should be an enhancement of that amount. The amount requested is therefore reasonable.

11

## CONCLUSION

For the foregoing reasons, Merced respectfully requests that this Court award attorney fees of $245,321.25 and untaxed expenses of $1,976.27, in addition to fees awarded for work in the District Court.

Respectfully submitted,

*/s/ John Wheat Gibson*

John Wheat Gibson, P.C.

By John Wheat Gibson
Texas Bar No. 07868500
701 Commerce, Suite 800
Dallas, Texas 75202
(214) 748-6944, FAX (214) 748-8693
jwg@jwgpc.com
Attorney for ~~Respondent~~ Plaintiff

## CERTIFICATE OF CONFERENCE

I certify that on September 30, 2009, I spoke with William M. McKamie, counsel for the defendants, and he objects to Plaintiff's Motion for Attorney's Fees on Appeal.

Dated: September 30, 2009

*/s/ John Wheat Gibson*
John Wheat Gibson, P.C.

By John Wheat Gibson
Texas Bar No. 07868500
701 Commerce, Suite 800
Dallas, Texas 75202
(214) 748-6944, FAX (214) 748-8693
jwg@jwgpc.com
Attorney for Respondent

## CERTIFICATE OF SERVICE

I hereby certify that on this September 30, 2009, one true and correct printed copy of the foregoing brief was served upon the following counsel by ~~courier service:~~ *Federal Express*

William Michael McKamie
Law Offices of William M. McKamie P.C.
941 Proton Road
San Antonio, Texas 78258
Phone: (210) 546-2122


Dated: September 30, 2009

*[signature]*
John Wheat Gibson, P.C.

By John Wheat Gibson
Texas Bar No. 07868500
701 Commerce, Suite 800
Dallas, Texas 75202
(214) 748-6944, FAX (214) 748-8693
jwg@jwgpc.com
Attorney for Respondent