ORIGINAL

CTU/RMT

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 OCT 20  AM 10: 10

CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSE MERCED, PRESIDENT,** | § | |
| **TEMPLO YORUBA OMO** | § | |
| **ORISHA TEXAS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 4-06CV-891-A** |
| **vs.** | § | |
| | § | |
| **THE CITY OF EULESS,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFF'S OPPOSED
MOTIONS FOR ATTORNEYS' FEES, TAXABLE COSTS AND UNTAXABLE COSTS**

---

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

I.  Introduction ..................................................................................................... 1

II. Argument and Authority .................................................................................. 2

    A. State Law Does Not Permit Recovery of Fees in the Absence of a Specific Pleading ........ 2

    B. Merced Has Not Complied with Federal Pleading Prerequisites ....................... 4

    C. Merced's Unconscionable Fee Request ........................................................... 8

        1.  The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly ........................................ 12

        2.  The likelihood that the acceptance of the particular employment will preclude other Employment by the lawyer ........................................................................................ 12

        3.  The fee customarily charged in the locality for similar legal services ........................ 13

        4.  The amount involved and the results obtained ........................................................ 14

        5.  The time limitations imposed by the client or by the circumstances ......................... 14

        6.  The nature and length of the professional relationship with the client ...................... 15

        7.  The experience, reputation, and ability of the lawyer or lawyers performing the services .................................................................................................................. 15

        8.  Whether the fee is fixed or contingent on results obtained or uncertainty of Collection before the legal services have been rendered ............................................ 15

            A. Douglas Laycock ................................................................................ 15

Conclusion and Prayer ............................................................................................. 16

Certificate of Service ............................................................................................... 17

H:\Docs\Merced\Pleadings\Brief In Support of Resp MF Atty Fees.doc

## TABLE OF AUTHORITIES

**Cases**

*Arthur Andersen & Co. v. Perry Equip, Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) ......................11

*Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ........................................................5

*Blum v. Stenson,* 465 U.S. 886, 895 (1984) ..............................................................................10

*Castle Hill Baptist Church v. City of Castle Hills*, No. SA-01-CA-1149-RF, 2004 U.S. Dist. WL 546792 (W.D. Tex. Mar. 17, 2004) ........................................................................10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993) ............................15

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ........................................................................9, 10

*Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120 (3d Cir. 2002)........................................10

*Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581 (5th Cir. Tex. 1980) .....................11

*Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. City of West Linn,* 111 P.3d 1123 (Or. 2005)........................................................................10

*Cutter v. Wilkinson*, 2005 FED App. 0390P (6th Cir.)........................................................................10

*Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1210-11 (10th Cir. 2002) ..................................5

*Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 512 (5th Cir. 2007)........................................7

*Domar Ocean Transp. V. Independent Ref. Co.*, 783 F.2d 1185, 1188 (5th Cir. 1986)...................5

*Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) ........................................................................8

*Edlund v. Bounds*, 842 S.W.2d 719, 731 n.5 (Tex.App.—Dallas 1992, writ denied)....................3

*Elsinore Christian Ctr. v. City of Lake Elsinore*, 197 F. App'x 718 (9th Cir. 2006) ....................10

*Employment Div. v. Smith*, 494 U.S. 872 (1990)........................................................................9

*Erisman v. Thompson*, 140 Tex. 361, 366 (Tex. 1943) ........................................................................3

*Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861, 870 (Tex.App.—Dallas 1993, writ denied) ........................................................................2

*Fifth Ave. Presbyterian Church v. City of N.Y.,* 293 F.3d 570 (2d Cir. 2002) ..............................10

*First Colonial Corp.*, 544 F.2d 1291, 1298-99 (5th Cir. 1977)......................................12

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ...............................................................5, 6

*Freedom Baptist Church v. Twp. of Middletown*, 204 F. Supp. 2d 857 (E.D. Pa. 2002) ..............10

*Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006) ................10

*Greater Bible Way Temple of Jackson v. City of Jackson et al.*, 733 N.W.2d 734 (Mich. 2007) ...9

*Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002)................................10

*Grissom v. The Mills, Corp.*, 549 F.3d 313, 322 (4th Cir. 2008) ...................................10

*Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006)..............10

*Hale O Kaula v. Maui Planning Comm'n*, 229 F. Supp. 2d 1056 (D. Haw. 2002)......................10

*Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 879 (5th Cir. 2004) ........................4

*Holland v. Wal-Mart Stores*, 1 S.W.3d 91, 95 (Tex. 1999)..........................................................2

*Hom v. Squires*, 81 F.3d 969, 973 (10th Cir. 1996).........................................................................5

*In Re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 754 (S.D. Tex. 2008)..........................................10

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ....................12

*Johnson v. Trueblood*, 629 F.2d 287, 294-95 (3d Cir. 1980) ............................................................6

*Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799 (Tex. 1974)....................................................2

*Konikov v. Orange County*, 276 F. App'x 916 (11th Cir. 2008);.....................................................9

*Living Water Church of God v. Charter Twp. of Meridian*, 2007 FED App. 0844N (6th Cir.)......9

*Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) .............................................................1

*Midrash Sephardi v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) ......................................10

*O'Connell v. Hitt*, 730 S.W.2d 16, 18 (Tex.App.—Corpus Christi 1987, no writ).........................2

*Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 480-81 (7th Cir. 1997)......7

*Primera Iglesia Bautista Hispana of Boca Raton v. Broward County*, 450 F.3d 1295 (11th Cir. 2006)...................................................................................................................................................9

iv

*Roland M. v. Concord Sch. Cmte.*, 910 F.2d 983, 998-99 (1st Cir. 1990) .......................................5

*Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ......................................................5

*Simith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004)................................................................4

*St. John's United Church of Christ v. City of Chicago*, 401 F. Supp. 2d 887 (N.D. Ill. 2005),
    aff'd, 502 F.3d 616 (7th Cir. 2007) ...........................................................................................9

*State Farm Fire & Ca. Co. v. Leasing Enters.*, 716 S.W.2d 553, 555 (Tex.App.—Houston [14th
    Dist.] 1986, writ ref'd n.r.e.).....................................................................................................3

*State Farm Fire & Ca. Co. v. Leasing Enters.*, 716 S.W.2d at 555 ............................................4, 7

*Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 701 (Tex.App.—San Antonio 1998, pet. denied)
    ......................................................................................................................................................2

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93 (3d Cir. 2006) ........................10

*Town of Foxfield v. Archdiocese of Denver*, 148 P.3d 339 (Colo. App. 2006)..............................10

*Town of Mount Pleasant v. Legion of Christ, Inc.*, 850 N.E.2d 1147 (N.Y. 2006) .......................10

*Turner v. Turner*, 385 S.W.2d 230, 233 (Tex. 1964) ......................................................................2

*U.S. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 245-47 (D.C. Cir. 1996) ............................................6, 7

**Statutes**

42 U.S.C. §§ 2000cc(a)(1) (2000) ....................................................................................................9

42 U.S.C. §§ 2000cc(a)(1)(A-B), .....................................................................................................9

42 U.S.C. §2000cc .............................................................................................................................8

42 USC §1983.................................................................................................................................14

71 Pa. Cons. Stat. § 2401 et seq. (2006) .........................................................................................12

775 Ill. Comp. Stat. 35/1 et seq. (2007)..........................................................................................12

Ariz. Rev. Stat. § 41-1493.01 (2006)...............................................................................................12

Conn. Gen. Stat. § 52-571b (2006)..................................................................................................12

Fla. Stat. § 761.01 - .05 (2006 & Supp. 2007).................................................................12

Gov't Code §551.146............................................................................................................3

Idaho Code § 73-402 (2006)................................................................................................12

Mo. Rev. Stat. § 1.302 (2007) ............................................................................................12

N.M. Stat. § 28-22-3 (2007) ...............................................................................................12

Okla. Stat Ann. Tit. 51, § 253 (West 2007) ........................................................................12

Okla. Stat. tit. 51 § 258 (2006) ...........................................................................................12

R.I. Gen. Laws § 42-80.1-3 (2007)......................................................................................12

Religious Freedom Restoration Act (RFRA) § 3(b)...............................................................9

Religious Freedom Restoration Act (RFRA) of 1993, Pub. L. No. 103-141, § 3(a), 1993
U.S.C.C.A.N. (107 Stat.) 1488, 1488 ..............................................................................9

S.C. Code Ann. § 1-32-40 (2006)........................................................................................12

TEX. CIV. PRAC. & REM. CODE §110.001 et seq. (2006) ......................................................12

TEX. CIV. PRAC. & REM. CODE §110.003(a)(b) ....................................................................9

TEX. CIV. PRAC. & REM. CODE §110.005(a)(4)) ..................................................................3

TEX. CIV. PRAC. & REM. CODE §37.009 ..............................................................................3

TEX. CIV. PRAC. & REM. CODE Ch. 38................................................................................2, 3

V.T.C.A., Govt. Code, T. 2, Subt. G, App. A, Art. 10, § 9 (Rule 1.04(b)(3) .................10

**Other Authorities**

Laffey Matrix, United States Attorney's Office,
http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html....................11

State Bar of Texas, Department of Research and Analysis Hourly Rates in 2005 Report,
published in 2006..........................................................................................................13

## Rules

Fed. R. Civ. P. 15(b)(2) ................................................................................................5

Fed. R. Civ. P. 16(d) ...................................................................................................4

Fed. R. Civ. P. 26(a)(2), (3) .........................................................................................4

Fed. R. Civ. P. 26(e); ...................................................................................................4

## Constitutional Provisions

Ala. Const. art. I, § 3.01 ............................................................................................12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSE MERCED, PRESIDENT,** | § | |
| **TEMPLO YORUBA OMO** | § | |
| **ORISHA TEXAS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 4-06CV-891-A** |
| **vs.** | § | |
| | § | |
| **THE CITY OF EULESS,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFF'S OPPOSED**
**MOTIONS FOR ATTORNEYS' FEES, TAXABLE COSTS AND UNTAXABLE COSTS**

---

COMES NOW THE CITY OF EULESS, Defendant and files its Response to Plaintiff's

Opposed Motion for Attorneys' Fees, Taxable Costs and Untaxable Costs and would respectfully

show the following:

## I. INTRODUCTION

1.      Plaintiff Merced's trial and appellate counsel correctly state the law regarding the award

and reasonableness of attorney fees – it is controlled by state law. *Mathis v. Exxon Corp.*, 302

F.3d 448, 461 (5th Cir. 2002). That is why, in spite of the Fifth Circuit's Order dated September

14, 2009[1], neither trial nor appellate counsel are entitled to attorney's fees because they were

never pled by Merced, no timely motion to amend pleadings or pretrial order has been filed by

Merced, Merced failed to timely designate experts on the issue of attorney fees and thus has

presented no competent evidence in support of fees, the issue was not tried by consent, Euless

---

[1]     See Case 4:06-cv-00891-A, Document 148.

1

objected to Merced's request for fees as soon as it learned the request would be made, and awarding fees at this late stage amounts to unfair surprise, and is thus patently prejudicial to Euless. *See Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 701 (Tex.App.—San Antonio 1998, pet. denied).

2.      Merced waited almost three years[2] to put Euless on notice that he would seek the recovery of attorney fees. Such a delay is inexcusable and precludes Merced from obtaining an award of fees when nothing prevented him from timely asserting them in the first place.

## II. ARGUMENT AND AUTHORITY

**A.      State Law Does Not Permit Recovery of Fees in the Absence of a Specific Pleading.**

3.      The general rule in Texas is that each litigant must pay its own attorney fees. *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex. 1964). Recovery of attorney fees from the adverse party is allowed only when the recovery is permitted by statute, by a contract between the litigants, or under equity. *Holland v. Wal-Mart Stores*, 1 S.W.3d 91, 95 (Tex. 1999) (statute and contract); *Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799 (Tex. 1974) (equity).

4.      There is no question that Texas law requires a plaintiff to plead for attorney fees, even when the statutory cause of action asserted allows for their recovery. *See Swate v. Medina Cmt. Hosp.*, 966 S.W.2d at 701 (fees sought under Open Meetings Act); *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861, 870 (Tex.App.—Dallas 1993, writ denied) (fees sought under Declaratory Judgments Act); *O'Connell v. Hitt*, 730 S.W.2d 16, 18 (Tex.App.—Corpus Christi 1987, no writ) (fees sought under DTPA and Tex. Civ. Prac. & Rem. Code Ch. 38). If a plaintiff does not plead for or prove attorney fees, it waives its claim to them. *State Farm Fire & Ca. Co. v. Leasing Enters.*, 716 S.W.2d 553, 555 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd

---

[2]      Merced filed his Original Complaint on **December 22, 2006**. See Case 4:06-cv-00891-A, Document 1.

2

n.r.e.); *see* also *Edlund v. Bounds*, 842 S.W.2d 719, 731 n.5 (Tex.App.—Dallas 1992, writ denied) (because plaintiff pleaded for attorney fees under contract but not under Tex. Civ. Prac. & Rem. Code Ch. 38, plaintiff was entitled to contractual attorney fees only).

5.      Here, it is undisputed that the only relief Merced ever sought from the trial court was injunctive relief[3], and the only claim upon which Merced ultimately prevailed was under Chapter 110 of the Texas Civil Practice and Remedies Code (Texas Religious Freedom Restoration Act – "TRFRA")[4].   Like the Texas Open Meetings Act (Gov't Code §551.146), Texas Declaratory Judgment Act (Tex. Civ. Prac. & Rem. Code §37.009), and other state statutes, TRFRA permits a prevailing party to recover reasonable attorney's fees and costs (Tex. Civ. Prac. & Rem. Code §110.005(a)(4)). By no means, however, does the statute waive a plaintiff's duty to affirmatively plead for all of the relief that it seeks. *See Erisman v. Thompson*, 140 Tex. 361, 366 (Tex. 1943) ([P]leadings determine the issues upon which parties go to trial, and it is not even proper to admit evidence unless it is addressed to or bears upon some issue raised by the pleadings.").

6.      Not only did Merced's complaint never put Euless on notice that Merced would seek the recovery of attorney fees, but neither did any of the evidence Merced adduced during discovery or at trial.   For example, Merced's designation of expert witnesses[5] lists only Dr. Michael Atwood Mason – Merced's liability expert.   Merced's counsel did not timely designate himself on the issue of attorney fees during discovery and absolutely no testimony was proffered at trial

---

[3]    "The Plaintiff seeks a permanent injunction against the enforcement of any city ordinance against him personally or against his use of his land in the practice of his religion, for which there is not a compelling governmental interest and for which the enforcement is not the least restrictive means of achieving that compelling governmental interest." *See* Case 4:06-cv-00891-A, Documents 1 and 33, ¶19 of both documents.   Merced's Amended Complaint was filed on **September 28, 2007.**

[4]    In footnote two of Merced's appellate lawyers' Motion for Attorney's Fees, Merced indicates that he "may also seek fees under 42 U.S.C. §1988." In more than two years of litigation, Merced **never** asserted a claim for relief under §1988 – in fact, this is the first time that any Merced pleading has **ever** referenced §1988. As this Court is aware, the Fifth Circuit did not reach any of Merced's federal statutory or constitutional claims.

[5]    Case 4:06-cv-00891-A, Document 37, filed on **October 15, 2007.**

3

to put Euless on notice that attorney fees would be sought. Indeed, not one of the individuals[6] who provide declarations and/or affidavits in support of Merced's motion for fees has ever been designated as an expert, nor were they timely disclosed as witnesses. As such, Euless objects to their declarations/affidavits as incompetent and inadmissible and moves the District Court to strike them. Fed. R. Civ. P. 26(a)(2), (3); Fed. R. Civ. P. 26(e); see, e.g., *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 879 (5th Cir. 2004).

7.      Certainly Merced's motion for fees does not assert that the issue was tried by consent, implied or otherwise, but even if it did, such an assertion would be patently false. *See Simith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (a party must identify some action or inaction during litigation from which the court can determine that the other party recognized the issue was involved in the case and consented to the trial of the issue.). The only "action" Merced identifies in his motions is the fact that he pled a cause of action under TRFRA. But simply generally pleading a statutory cause of action that allows for the recovery of attorney fees is insufficient to put the other party on notice that fees are being sought. *See State Farm Fire & Ca. Co. v. Leasing Enters.*, 716 S.W.2d at 555.

**B.      Merced Has Not Complied with Federal Pleading Prerequisites.**

8.      Merced's pleadings do not assert a claim for attorney fees. Neither does the Joint Pretrial Order.[7] Because it is the pretrial order, and not the pleadings, that controls the issues to be tried, Merced's motion for attorney fees must be predicated on a post-trial motion to amend the Joint Pretrial Order. *See* Fed. R. Civ. P. 16(d). Merced has filed no such motion.

---

[6]    Gene H. Schaerr, Eric Rassbach, Luke Goodrich, Hannah C. Smith, Lori Windham, Douglas Laycock, John McKetta, John Wheat Gibson, Sr.

[7]    Case 4:06-cv-00891-A, Document 85, filed on **February 25, 2008.**

4

9.    A post-trial motion to amend the pretrial order should do a number of things, including:

- Explain why a request for fees was not contained in the pleadings or pretrial order – *Roland M. v. Concord Sch. Cmte.*, 910 F.2d 983, 998-99 (1st Cir. 1990);

- Explain why the post-trial motion does not amount to undue delay, bad faith or dilatory motive – *Foman v. Davis*, 371 U.S. 178, 182 (1962);

- Explain why the opposing party would not be unduly prejudiced or surprised by the amendment – *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1210-11 (10th Cir. 2002).

10.    A motion to amend the pleadings and the pretrial order should be made as soon as a party realizes the amendment is necessary. *See*, e.g., *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (amendment proposed over a year after discovery ended was untimely); *Hom v. Squires*, 81 F.3d 969, 973 (10th Cir. 1996) (two years after deadline and only two months **before** trial was too late) (emphasis added).    The longer the period of unexplained delay, the less prejudice the nonmovant is required to show.    *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).    Although a motion may be made after judgment, its purpose is to conform pleadings to the evidence presented at trial that are tried by consent. Fed. R. Civ. P. 15(b)(2); *see Domar Ocean Transp. V. Independent Ref. Co.*, 783 F.2d 1185, 1188 (5th Cir. 1986).

11.    The District Court ordered December 17, 2007[8] as the deadline to file a motion for leave to amend pleadings. Not only has Merced never filed a motion for leave to amend pleadings and/or the pretrial order, he did not put Euless on notice until August of 2009 that he would seek attorney fees when he filed an opposed motion for attorney fees with the Fifth Circuit. Merced's

---

[8]    Case 4:06-cv-00891-A, Document 36.

5

motion for fees is absolutely silent on the reason for this delay of nearly two years. The case was remanded back to the District Court, and on September 16, 2009, this Court entered an order enjoining Euless from enforcing its ordinances in a manner that burdens Merced's exercise of his religion.[9] Merced filed his first request for attorney fees in the District Court on September 30, 2009, seeking $107,599.80 for trial counsel and $245,321.25 for appellate counsel.

12.     Undoubtedly, Merced will assert that he complied with the Federal Rule of Civil Procedure 54(d)(2)(B), which requires that a motion for attorney fees be filed within 14 days after judgment is entered.  And while that may be technically true as it relates to the judgment the District Court rendered on September 16, 2009, it is not true for the judgment the District Court rendered on March 10, 2008.[10]  Instead, without **any** explanation for this delay and without a motion to amend pleadings and the Joint Pretrial Order, he asks for nothing more than a "do-over" because he failed to assert a claim for relief, which in retrospect, he decided he would like to have.  "Do-overs" to the tune of $350,000 in unanticipated attorney fees are prejudicial and unfairly surprising on their face.

13.     Even if the District Court were to leniently construe his motion for attorney fees as a motion to amend his pleadings and the Joint Pretrial Order, however, it should still be denied. First, it is filed too late. *Foman v. Davis*, 371 U.S. at 182; *see e.g., Johnson v. Trueblood*, 629 F.2d 287, 294-95 (3d Cir. 1980) (amendment filed on 43rd day of trial too late because it would force defendant to prepare new issue on defense).  Second, the issue was not tried by actual consent – the Joint Pretrial Order makes no mention of fees and Merced signed off on it as a "**full and complete**" statement of the claims asserted against Euless.[11]  *See, e.g., U.S. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 245-47 (D.C. Cir. 1996) (noting that Rule 15 treats unpled issues as

---

[9]   Case 4:06-cv-00891-A, Document 151.
[10]  Case 4:06-cv-00891-A, Document 114.
[11]  Case 4:06-cv-00891-A, Document 85.

though they were raised in the pleadings only on the consent of the parties – either express or implied). And since merely asserting a claim under TRFRA is insufficient to put Euless on notice that he was seeking fees, Merced can make no credible claim that the issue was tried by implied consent. *Id.*, *see also* *State Farm Fire & Ca. Co. v. Leasing Enters.*, 716 S.W.2d at 555.

14.    Third, $350,000 is a substantial sum of money. When a litigant weighs the pros and cons of going to trial, it takes into account its perceived chance of success and weighs it against a "worst case scenario" in order to determine whether the potential reward is worth the risk. Because Merced inexplicably failed to put Euless on notice that he was seeking fees when the case was actually being tried, Euless would quite naturally assess the potential risk of an adverse ruling (injunctive relief – invalidation of an ordinance) differently than it would assess the risk of a claim for injunctive relief **and** Merced's attorney fees. Potentially being on the hook for attorney fees could certainly influence a party's strategy, including whether or not it should settle a claim, and under what terms, and failing to timely apprise Euless of this potential is unfairly surprising, to say the least. *See*, e.g., *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 480-81 (7th Cir. 1997) (where new counts added prospect of punitive damages, which might have caused defendant to take different measure to protect itself from additional liability).

15.    By asserting a claim for attorney fees long after the District Court's deadline to amend pleadings and/or submit a Joint Pretrial Order has passed, Merced's tactic of asking for fees **after** he wins on appeal is nothing short of the worst sort trial-by-ambush tactic. *See Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 512 (5th Cir. 2007) ("Rule 16 and our precedent could not be more clear: Pretrial orders control the scope of the trial, and those facts not contested in the pretrial order are not up for debate at a later date, even if a majority of this court now wants to debate them.") (Benavides, King, Davis, Wiener, Barksdale, Stewart, and Dennis,

Circuit Judges in dissent) (internal citation omitted). Such a move substantially and unfairly prejudices Euless because it had neither the opportunity nor the need at trial to take the potential risk of paying attorney fees into account in its assessment of the case. *See Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) (finding that prejudice by a late amendment is inevitable if the other party does not have a fair opportunity to defend against an issue).

16.    Absolutely nothing prevented Merced and his trial counsel from timely asserting a claim for attorney fees. Merced and his trial counsel knew (or should have known) that two of the statutory claims asserted in his Original Complaint (42 U.S.C. §2000cc and TRFRA) allow for the recovery of reasonable attorney fees, yet the only relief Merced **ever** requested was injunctive – that is, until the Fifth Circuit reversed the District Court on appeal. Such *post hoc* attempts to redefine the parameters of the playing field are akin to a five year old changing the rules of a game after he realizes that he has lost. Merced's unexplained delay in requesting fees until long after the case was tried and his failure to comply with basic procedural requirements once he belatedly realized that attorney fees sound like a good idea, should not be rewarded lest other litigants learn the lesson that this District Court's deadlines are suggestions more so than rules.

17.    Euless asks the District Court to deny Merced's motion(s) for attorney fees.

**C.    Merced's Unconscionable Fee Request.**

18.    Arguing strictly in the alternative, if the District Court is inclined to consider Merced's fee request, the fees requested are unreasonable. According to its own website, the Becket Fund is a frequent litigator of free exercise issues: "We have developed expertise in all areas of religious freedom law, but especially under the Free Speech, Free Exercise, and Establishment Clauses of the First Amendment to the U.S. Constitution." Becket Fund for Religious Liberty,

Litigation, http://www.becketfund.org/index.php/case/ (last visited August 25, 2009) (see Appendix Tab 1).

19.    It is, therefore, difficult to explain why four litigators from within the Becket Fund were needed to litigate this particular case, or why they should be permitted to charge rates that exceed the rates of local attorneys.

20.    Admittedly, this case presents the issue of first impression whether public health is a compelling interest, but the relevant cases and principles are extremely familiar to every lawyer at the Becket Fund (as well as their consultant Douglas Laycock).  The legal elements of this case involve standard legal principles that the Becket Fund encounters in the vast majority of its free exercise cases: whether the law is neutral and generally applicable, *Employment Div. v. Smith*, 494 U.S. 872 (1990); whether the law imposes a "substantial burden" on a religious actor, Religious Freedom Restoration Act (RFRA) of 1993, Pub. L. No. 103-141, § 3(a), 1993 U.S.C.C.A.N. (107 Stat.) 1488, 1488, <u>invalidated by</u> *City of Boerne v. Flores*, 521 U.S. 507 (1997); Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc(a)(1) (2000), Texas Religious Freedom Restoration Act (TRFRA), TEX. CIV. PRAC. & REM. CODE § 110.003(a) (LEXIS through 2009 legislation); and whether the law serves a "compelling interest" in the "least restrictive means."  Religious Freedom Restoration Act (RFRA) § 3(b); Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc(a)(1)(A-B), Texas Religious Freedom Restoration Act (TRFRA), TEX. CIV. PRAC. & REM. CODE § 110.003(b).  There was hardly any need for four attorneys to work through these legal issues.[12]

---

[12]    According to the Becket Fund's website, it has been involved in the following free exercise cases, each of which would involve at least some if not all of the principles involved in this case: *Konikov v. Orange County*, 276 F. App'x 916 (11th Cir. 2008); *St. John's United Church of Christ v. City of Chicago*, 401 F. Supp. 2d 887 (N.D. Ill. 2005), <u>aff'd</u>, 502 F.3d 616 (7th Cir. 2007*); Living Water Church of God v. Charter Twp. of Meridian*, 2007 FED

9

21.    Moreover, the trial was so brief – only three hours – it is not as though their time needed to be spent on poring over the trial record.  As appeals go, this one was based on a relatively small record and a very limited constellation of cases.

22.    The rate must reflect the "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984).  *See* V.T.C.A., Govt. Code, T. 2, Subt. G, App. A, Art. 10, § 9 (Rule 1.04(b)(3): Factors that may be considered in determining the reasonableness of a fee include, but not to the exclusion of other relevant factors, the following: (3) the fee customarily charged in the locality for similar legal services); *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 754 (S.D. Tex. 2008) ("The relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere." (citing *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 662 (5th Cir. 2002).

23.    Even assuming this Court could consider rates from the D.C. area, the Becket Fund's rates are excessive.  Recent cases awarding fees in the D.C. area have referred to the United States Department of Justice's <u>Laffey</u> Matrix in awarding fees. *See, e.g., Grissom v. The Mills, Corp.*, 549 F.3d 313, 322 (4th Cir. 2008); *In Re Enron Corp. Sec.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) According to the <u>Laffey</u> Matrix, the Becket Fund's fees would be as follows:

---

App. 0844N (6th Cir.); *Greater Bible Way Temple of Jackson v. City of Jackson et al.*, 733 N.W.2d 734 (Mich. 2007); *Primera Iglesia Bautista Hispana of Boca Raton v. Broward County*, 450 F.3d 1295 (11th Cir. 2006); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006); *Elsinore Christian Ctr. v. City of Lake Elsinore*, 197 F. App'x 718 (9th Cir. 2006); *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006); *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93 (3d Cir. 2006); *Town of Mount Pleasant v. Legion of Christ, Inc.*, 850 N.E.2d 1147 (N.Y. 2006); *Town of Foxfield v. Archdiocese of Denver*, 148 P.3d 339 (Colo. App. 2006); *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. City of West Linn*, 111 P.3d 1123 (Or. 2005); *Cutter v. Wilkinson*, 2005 FED App. 0390P (6th Cir.); *Midrash Sephardi v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004); *Castle Hill Baptist Church v. City of Castle Hills*, No. SA-01-CA-1149-RF, 2004 U.S. Dist. WL 546792 (W.D. Tex. Mar. 17, 2004); *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120 (3d Cir. 2002); *Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570 (2d Cir. 2002); *Freedom Baptist Church v. Twp. of Middletown*, 204 F. Supp. 2d 857 (E.D. Pa. 2002); *Hale O Kaula v. Maui Planning Comm'n*, 229 F. Supp. 2d 1056 (D. Haw. 2002); *City of Boerne v. Flores*, 521 U.S. 507 (1997).

| Name: | Yrs. Experience: | Rate: | Hours: | Total: |
|-------|------------------|-------|--------|--------|
| Lori Windham | 4-7 | $270 | 230.75 | $62,302.50 |
| Eric Rassbach | 8-10 | $330 | 174 | $57,420.00 |
| Luke Goodrich | 4-7 | $270 | 53.5 | $14,445.00 |
| Hannah Smith | 8-10 | $330 | 45.5 | $15,015.00 |

Totals: $149,182.50

*See* Plaintiff-Appellant José Merced's Opposed Motion for Attorney's Fees and Untaxed Costs at Exhibits G-J, *Merced v. Kasson*, Nos. 08-10358, 08-10506 (5th Cir. Aug. 14, 2009) (detailing hours and experience of Becket Fund attorneys). *See* <u>Laffey</u> Matrix, United States Attorney's Office, http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html (last visited Aug. 26, 2009) (using 2008-09 rates to compute total fees under <u>Laffey</u> matrix) (see Appendix Tab 2). Moreover, the use of four attorneys on this matter at the appellate stage following a 3-hour trial, *see supra*, is excessive and unreasonable. If this Court should decide to award attorneys' fees, the number of hours should be reduced by 75% to represent a reasonable amount of time expended upon this matter (the reasonable time of one Becket Fund attorney). Thus, at the most the Becket Fund should receive approximately $50,000.00 under its fee submission, assuming they can file for fees without having amended the complaint, pretrial order and failing to explain this undue delay.

24.     The Texas courts have employed the "Andersen factors" to determine the reasonableness of fees. *See Arthur Andersen & Co. v. Perry Equip, Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).[13]

---

[13]     The Fifth Circuit also has adopted a multi-factored approach to reasonableness that encompass many factors. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581 (5th Cir. Tex. 1980) (listing "the following 12 factors as bearing on the question of reasonable attorneys' fees: (1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results

11

As applied to this appeal, each of these factors argue against the fee request in this case and make clear that they are unreasonable.

**1.    The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly**

25.    This case does not introduce difficult questions under free exercise law.  Nor are issues of first impression infrequently decided in cases across the country. This particular appeal is no different than any First Amendment or statutory accommodation case.    Rather, it is a straightforward state religious freedom rights act case.  Aside from its emphasis on notice and fairness to local governments burdened by the law, TRFRA is similar to many other state RFRAs found in states across the county. *See*, Ala. Const. art. I, § 3.01; Ariz. Rev. Stat. § 41-1493.01 (2006); Conn. Gen. Stat. § 52-571b (2006); Fla. Stat. § 761.01 - .05 (2006 & Supp. 2007), Idaho Code § 73-402 (2006); 775 Ill. Comp. Stat. 35/1 et seq. (2007); Mo. Rev. Stat. § 1.302 (2007); N.M. Stat. § 28-22-3 (2007); Okla. Stat. tit. 51 § 258 (2006); 71 Pa. Cons. Stat. § 2401 et seq. (2006); Okla. Stat Ann. Tit. 51, § 253 (West 2007); R.I. Gen. Laws § 42-80.1-3 (2007); S.C. Code Ann. § 1-32-40 (2006); Tex. Civ. Prac. & Rem. Code § 110.001 et seq. (2006).

**2.    The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer**

26.    "The Becket Fund operates in three arenas: the courts of law (litigation), the court of public opinion (media), and in the academy (scholarship), at home and abroad (international)", and employs nine lawyers, a research assistant, a legal assistant and various other staff members. Becket Fund for Religious Liberty, About Us, http://www.becketfund.org/index.php/article/82.html (last visited Aug. 26, 2009) (See Appendix Tab 3).  Moreover, it solicits and receives large sums from

---

obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *In re First Colonial Corp., 544 F.2d 1291, 1298-99* (5th Cir. 1977) (citing the 12 *Johnson* factors).  Application would result in the same conclusions under state law.

12

private donations to take on cases just like Merced's. The Becket Fund's three most recent IRS

Form 990 – Return of Organization Exempt from Income Tax – shows that it has received public

donations of over $2 million each year between 2003 and 2005.[14] Foundation Center, 990 Finder,

http://tfcny.fdncenter.org/990s/990search/esearch.php (last visited Aug. 26, 2009) (search

"Becket Fund," click 2005, 2004, and 2003) (See Appendix Tab 4). It is highly unlikely that this

case, involving an appeal from a three-hour trial, prevented the attorneys at The Becket Fund

from taking simultaneous employment in other cases presenting the same issues.

### 3.     The fee customarily charged in the locality for similar legal services

27.     Plaintiff-Appellant Merced's only argument for this third factor is "there is no easy

answer for what the 'customary' rate in the locality for 'similar legal services' would be."

Plaintiff-Appellant José Merced's Opposed Motion for Attorney's Fees and Untaxed Costs at 17,

*Merced v. Kasson*, Nos. 08-10358, 08-10506 (5th Cir. Aug. 14, 2009). But a reasonable range

can readily be calculated by using the State Bar of Texas, Department of Research and Analysis

Hourly Rates in 2005 Report, published in 2006. This document, available at

http://www.bucklin.org/pdf/TexasBarRates.pdf, outlines the 2005 hourly rates at various firms

categorized by firm size, years of experience and areas of practice (See Appendix Tab 5). From

this report one can learn, for example, that there are only two attorneys practicing in the Fort

Worth Area that bill at a rate of $500 per hour or more. Their argument that "it is not uncommon

for attorneys litigating in Tarrant County, Texas…to charge in excess of $500 per hour," *Id.*, is

not true. In fact, it is uncommon, given that only two attorneys in the area charge near this fee.

28.     Further, as established by the attached Affidavit of William M. McKamie (See Appendix

Tab 6), the customary rate in Tarrant County, Texas for legal services of this nature is a

---

[14]     The Becket Fund's IRS Form 990 shows on line 1(a), "Direct Public Support," that the organization received $2,223,598 in 2005, $2,186,137 in 2004, and $2,419,979 in 2003.

maximum of $350 per hour. Attached to the Affidavit is an Order signed and entered by Judge Terry Means, Fort Worth Division, Northern District of Texas, awarding fees to the Defendant City of Euless after a directed verdict in the City's favor. Although not a religious freedom case, it involved sophisticated legal analysis of complicated issues, high-level strategies and trial development, in the realm of one of the most remedial federal statutes – the Fair Housing Act, as well as 42 USC §1983 and related constitutional issues. The Order was based upon submitted attorneys' fee invoices, and found reasonable and customary fees in the same area of the state to be as submitted, in the $200-300 per hour range.

29.    On this third Andersen factor, they have not met their burden.

### 4.    The amount involved and the results obtained

30.    Although Merced ultimately prevailed under his TRFRA claim, Euless prevailed on other claims against itself and its employees who were named Defendants. The District Court dismissed Merced's RLUIPA claim and dismissed his claims against the named individuals. By no means was Merced the only party who prevailed on any claims in this litigation.

### 5.    The time limitations imposed by the client or by the circumstances

31.    The very fact that there were no time limitations imposed by the client means that Merced's attorneys in this case had the luxury of reviewing documents, having many conference calls and discussing legal issues, all without putting Euless on notice that they would later petition for attorney fees. Merced's attorneys state that "[t]his factor is not relevant to this appeal," *Id.*, at 18. That is clearly their viewpoint, but hardly speaks to this Andersen factor. Because they failed to plead attorney fees (and because they promised their client that he would not have to pay for their services) no time limitations were or could have been instituted that would have prevented their accrual of unreasonable and superfluous hours.

**6.    The nature and length of the professional relationship with the client**

32.    The Becket Fund argues that "[b]ecause Merced was unable to pay legal fees" they "agreed to represent him …subject to the possibility of attorney's fees." *Id.*  However the Becket Fund should have known that attorney fees could not be a "possibility," Merced's trial counsel having failed to plead fees in the original complaint. Merced's attorneys failed to plead those fees pursuant to the statute, and they failed to amend the complaint or pretrial order to put Euless on notice that this was a "possibility."

**7.    The experience, reputation, and ability of the lawyer or lawyers performing the services**

33.    Because the attorneys representing Merced are so well-versed in this field, their excessive time spent conferencing, discussing and reviewing legal research was unnecessary and unreasonable.

**8.    Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered**

34.    As discussed in Section I, *supra* page 2, contingent fees must be plead.

**A.    Douglas Laycock**

35.    It is even more difficult to justify the fees submitted by Douglas Laycock.  While undoubtedly an expert in the field, at this stage in the Becket Fund's practice, it is hard to imagine that further expertise in the field is either justified, appropriate, or possible.  While it is true that he previously litigated a case involving the Santeria, *see Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993), that case focused on the targeting of the Santeria through laws aimed at "animal sacrifice."  No expertise in animal sacrifice cases was required in order to litigate the free exercise issues involved.

15

## CONCLUSION AND PRAYER

For the foregoing reasons, the Defendant-Appellees, City of Euless request the Court

deny Plaintiff-Appellant, Jose Merced's Opposed Motion(s) For Attorney's Fees, Taxable Costs

And Untaxable Costs.

Respectfully submitted,

By: _____
BRADFORD E. BULLOCK
State Bar No. 00793423


WILLIAM M. MCKAMIE
State Bar No. 13686800
BRADFORD E. BULLOCK
State Bar No. 00793423
**LAW OFFICES OF**
**WILLIAM M. MCKAMIE, P. C.**
941 Proton Road
San Antonio, Texas 78258
210.546.2122
210.546.2130 (Facsimile)

**COUNSEL FOR DEFENDANT**

WILLIAM ANDREW MESSER
State Bar No. 13472230
MESSER, CAMPBELL & BRADY, L.L.P.
6351 Preston Road, Suite 350
Frisco, Texas 75034
972.424.7200
972.424.7244 (Facsimile)

16

## CERTIFICATE OF SERVICE

I certify that on October 19, 2009, a complete and correct copy of **DEFENDANT'S BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFF'S OPPOSED MOTIONS FOR ATTORNEYS' FEES, TAXABLE COSTS AND UNTAXABLE COSTS** was served upon the following counsel of record in accordance with the Federal Rules of Civil Procedure:

John Wheat Gibson                      *Via CMRRR #  7160 3901 9848 2764 1329*
701 Commerce, Suite 520
Dallas, Texas 75202

Eric C. Rassbach                       *Via CMRRR #  7160 3901 9848 2764 1336*
Hannah C. Smith
Lori H. Windham
Luke W. Goodrich
The Becket Fund for Religious
Liberty
1350 Connecticut Avenue, NW
Suite 605
Washington, DC 20036

Professor Douglas Laycock             *Via CMRRR #  7160 3901 9848 2764 1343*
Yale Kamisar Collegiate
Professor of Law
University of Michigan Law School
625 S. State St.
Ann Arbor, MI 48109

**WILLIAM M. MCKAMIE**
**BRADFORD E. BULLOCK**

17